

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000
www.potteranderson.com

Bindu A. Palapura
Partner
Attorney at Law
bpalapura@potteranderson.com
302 984-6092 Direct Phone
302 658-1192 Firm Fax

October 10, 2018

<u>**VIA ELECTRONIC FILING**</u>

The Honorable Colm F. Connolly
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

      Re:    <u>HIP, Inc. v. Hormel Foods Corporation, et al.</u>, C.A. No. 18-615-CFC

Dear Judge Connolly:

    We submit this letter brief on behalf of Defendants to address three discovery disputes between the parties: (1) the scope of the protective order, (2) Plaintiff HIP Inc.'s failure to preserve and produce relevant metadata, and (3) HIP's improper document dump.

**I.    Disputes Regarding Proposed Provisions in the Protective Order.**

    **A.  Access to "Highly-Confidential – Outside Counsel Attorneys' Eyes Only."**

    The first dispute concerns access to information designated "Highly-Confidential – Outside Counsel Attorneys' Eyes Only" in Section 7.3. (*See* Ex. A, Parties' proposed protective order.) Defendants propose a customary Outside Counsel AEO provision, preventing access by the parties themselves to each other's most sensitive and confidential information. HIP proposes that its president, David Howard, have access to technical information designated as AEO. Howard is the inventor of several patents including the patent-in-suit which have been assigned to HIP, and is HIP's sole employee after its asset sale. HIP sought similar access for Howard in its previous case against Hormel, and was denied access by the Minnesota District Court. (*See* Ex. B, Minnesota Protective Order, § 5 (AEO provision excluding Howard).)

    Under HIP's proposal, Howard would be allowed to see Defendants' confidential and sensitive technical information including product development, engineering, testing and manufacturing documents. There is no dispute that Howard is a competitive decisionmaker for HIP. As a competitive decisionmaker, Howard should be excluded from access to Defendants' AEO information even where HIP and Defendants are not direct competitors. *See, e.g., Apeldyn Corp. v. AU Optronics Corp.*, C.A. No. 08-568-SLR, 2012 WL 2368796, at *7-8 (D. Del. June 13, 2012) (denying access to plaintiff NPE's principals). In addition, courts have recognized the risk of inadvertent use of confidential information if disclosed to inventors, engineers, and scientists. *See Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del.1998) ("noting that although the Court does not question the inventor of the named patent and employee of plaintiff's intentions, it '"nonetheless question[s] his human ability during future years of research to separate the applications he has extrapolated from [defendants'] documents from those he develops from his own ideas"). As the sole employee of HIP, Howard is especially situated to learn the details of Hormel's highly sensitive hybrid

process development and manufacturing information, and to disclose those details to Hormel competitors such as Oscar Mayer, Tyson, and Smithfield in HIP's continued attempt to commercialize their claimed invention.

Howard's lack of access would not impede HIP's ability to litigate through outside counsel. Any alleged hardship on HIP by denying Howard access to AEO material is mitigated by the fact that HIP's counsel will have access to the AEO materials and can therefore competently advise their client. *See PhishMe, Inc. v. Wombat Security Techs., Inc.*, C.A. No. 16-403-LPS-CJB, 2017 WL 4138961, at *9 (D. Del. Sept. 18, 2017); *Vardon Golf Co., Inc. v. BBMG Golf, Ltd.*, Civ. No. 91-0349, 1991 WL 222258, at *2 (N.D. Ill. Oct. 24, 1991) (holding that the hardship on plaintiff due to plaintiff's sole owner and employee being unable to discover protected material is negligible because plaintiff's trial counsel would be permitted access to the protected material). Therefore, Defendants request that the Court adopt their proposed and customary provision for Section 7.3 and deny Howard access to AEO materials, just as the Minnesota Court did.

Similarly, the parties do not agree on the proposed language in Section 7.3(e). (Ex. A.) Defendants propose that for a specific document, persons shown on the face of the document to have authored or received it can access AEO material – which is the same language the parties have already agreed to for access to "Confidential" material and the same language the parties agreed to in the Minnesota action. (*Id.*, § 7.2(g), p. 10; Ex. B, § 5(f).) HIP proposes that the author or any recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information can have access to AEO material. HIP's proposed language is nothing more than an end-around the AEO limitations, allowing Howard to claim prior knowledge of and therefore see AEO document contents. Thus, access should be limited to individuals who have knowledge as evidenced by the face of the document. Defendants request that the Court adopt their proposed language for Section 7.3(e).

### B.     A Prosecution Bar is Needed in this Case.

When necessary, courts include prosecution bars in protective orders because they recognize that "there may be circumstances in which even the most rigorous efforts of the recipient of [sensitive] information to preserve confidentiality in compliance with … a protective order may not prevent inadvertent compromise." *In re Deutsche Bank Trust Co. Ams.,* 605 F.3d 1373, 1378 (Fed. Cir. 2010). Prosecution bars are common in protective orders entered by courts in this District. Here, a prosecution bar is necessary to prevent inadvertent disclosure of competitive information by HIP's trial counsel, Dennis Brown, who is substantially engaged in HIP's ongoing patent prosecution and is a competitive decisionmaker for HIP with respect to HIP's patent portfolio. Indeed, Brown prosecuted the patent application for the patent-in-suit, was outside counsel in the Minnesota Litigation, and is a fact witness in this case with respect to Defendants' inequitable conduct and correction of inventorship counterclaims. HIP continues to prosecute a continuation application from the patent-in-suit. Brown admitted in the Minnesota Litigation that prohibiting use of confidential information to prosecute further patent rights "is just typical." (Ex. C, p. 7.) Its own counsel's view notwithstanding, HIP does not believe that a prosecution bar is necessary, but agrees that Defendants' proposed language for a prosecution bar is appropriate. Defendants have a legitimate concern that their "Highly Confidential" information will be put at risk of inadvertent use or disclosure by HIP. Therefore, Defendants request that the Court adopt their proposed language for a prosecution bar as set forth in Section 8 of the proposed protective order. (Ex. A, § 8, pp. 13-14.)

### C. Disputes over Definitions in the Protective Order.

The remaining disputes regarding the protective order concern the definitions of "Confidential" in Section 2.2, "Highly Confidential – Outside Attorneys' Eyes Only" in Section 2.6, and "Protected Material" in Section 2.13. In each, HIP seeks to undermine Defendants' ability to properly protect its own proprietary information. Defendants' proposed definitions are customary and reasonable, and should be included in the protective order.

## II. HIP's Failure to Preserve and Produce Relevant Metadata.

HIP's document production failed to provide relevant metadata as requested by Defendants and as required by Delaware's Default Order on ESI. (*See* §§ 5(c) and (e).) Even more troubling, it appears that HIP has failed to properly preserve the original ESI. HIP appears to have disposed of its records in 2017 while being under a duty to preserve, and wants to rely simply on documents from the Minnesota Litigation produced without proper metadata. HIP refuses to explain whether it has preserved the original ESI and metadata for this case. Under Delaware's Default Order, HIP "must preserve the integrity of the underlying ESI , *i.e.*, the original formatting , the metadata (as noted below) and, where applicable, the revision history." (*See* § 5(c).) "Metadata can assist in proving the authenticity of the content of electronic documents." *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 647 (D. Kan. 2005). Here, metadata is especially important given the central issue of inventorship and HIP's alleged corroborating evidence. Therefore, Defendants request that the Court order HIP to produce relevant metadata, or explain why the metadata no longer exists.

## III. HIP's Improper Document Dump.

Paragraph 1(b) of Delaware's Default Order provides that "parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information." HIP's wholesale production of every single document it produced in the Minnesota Litigation is contrary to the Default Order and violates Rules 26 and 34. HIP produced 56,726 pages – the majority of which contains irrelevant and nonresponsive documents. The Minnesota Litigation was not a patent infringement case and did not include the causes of action asserted in this case. It appears that nearly 60% of HIP's production contains irrelevant documents such as 8-years of company phone bills and quotes for equipment that appear to have nothing to do with this case. HIP should not be permitted to improperly shift the burden and cost to review their documents onto Defendants. Courts across the country have taken parties to task for such impermissible "document dumps." *See, e.g., Plan Pros, Inc. v. Torczon*, No. 8:08-cv-136, 2009 WL 3063017, at *4 (D. Neb. Sept. 18, 2009) (holding that producing party's "'7800 page document dump' does not satisfy their obligations under Rules 26, 33 and 34). Therefore, Defendants request that the Court order HIP to withdraw its improper document dump and produce only the documents relevant to the claims and defenses in this case, with the relevant metadata.

        Respectfully,

        */s/ Bindu A. Palapura*

        Bindu A. Palapura

BAP:nmt/5958033/45097
Enclosures
cc:    Clerk of the Court (via hand delivery, w/encls.)
        Counsel of Record (via electronic mail, w/encls.)