# MORRIS, NICHOLS, ARSHT & TUNNELL LLP

1201 NORTH MARKET STREET
P.O. BOX 1347
WILMINGTON, DELAWARE 19899-1347

October 11, 2018

The Honorable Colm F. Connolly  **VIA ELECTRONIC FILING**
J. Caleb Boggs Federal Building
844 N. King Street, Unit 31, Room 4124  REDACTED -- PUBLIC VERSION
Wilmington, DE 19801-3555

Re: *HIP, Inc. v. Hormel Foods Corp., et al.*, C.A. No. 18-615 (CFC)

Dear Judge Connolly:

This letter responds to Hormel's October 10 letter (D.I. 44) and explains why the Court should adopt HIP's proposed terms in the Protective Order. It also explains that HIP's production, including documents HIP produced in the Minnesota Action[1], is appropriate because of the substantial factual overlap in claims, Hormel's familiarity with those documents, the modest size of the production, and the concurrent lack of prejudice to Hormel compared to the burden to HIP. Finally, consistent with ¶ 5(e) of the ESI Default Standard, and as HIP has told Hormel on several occasions, HIP already has produced metadata to the extent it exists.

**Relevant Background**: As Hormel concedes in its letter, HIP (f/k/a Unitherm Food Systems, Inc.) filed the Minnesota Action in 2014 for breaches of a 2007 Joint Development Agreement ("JDA") and a 2007 Mutual Confidential Disclosure Agreement ("MCDA") and for theft of trade secrets, after Hormel began selling its Bacon 1 products. Hormel counterclaimed for ownership of the patent applications that resulted in the '610 Patent, arguing that under the JDA Hormel employees were co-inventors of that subject matter. Both the District Court and the Eighth Circuit rejected those Hormel claims. *See, e.g.*, *Unitherm Food Systems, Inc. v. Hormel Foods Corporation*, 2016 U.S. Dist. LEXIS 96938 at **14-15 & 15 n.4 (D. Minn. July 25, 2016), *aff'd*, 888 F.3d 334, 842-43 (8th Cir. 2018) (Hormel based its theory of breach on HIP failing to "assign ownership of the Unitherm Process and its patent"). *See also* D.I. 27, 38 in this case (explaining factual interrelationships of this case and the Minnesota Action.)

Mr. Howard is the sole employee of HIP. In 2017, he sold most of the business and assets of Unitherm to a third party, but not the '610 Patent, and renamed Unitherm to HIP. Mr. Howard is now retired from the business of inventing new processes and developing equipment for cooking meat. Moreover, he is barred by a non-compete agreement. *See* Ex. 8. Thus, Hormel's assertion that "[t]here is no dispute that Howard is a competitive decisionmaker for HIP" is simply wrong. *See, e.g.*, *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1470 n.1 (Fed. Cir. 1984)(defining competitive decisionmaking as involving business decisions such as pricing and product design "made in light of similar or corresponding information about a competitor."). Indeed, Hormel contradicts its own positions, as its letter argues that HIP and Hormel are not direct competitors, although its cases all relied on direct competition, and Hormel has objected, albeit improperly, to document production because "Plaintiff does not manufacture or sell a precooked bacon product that competes with Hormel's Bacon 1 products …." Ex. 9.

---

[1] Defined terms have the same meaning as set forth in HIP's opening letter. (D.I. 45)

The Honorable Colm F. Connolly
October 11, 2018

**The Protective Order Disputes:** Mr. Howard should have access to all information Hormel produces in this case, and the opportunity to participate in a site inspection pursuant to Fed. R. Civ. P. 34(a)(2). He has unique understanding of the accused technology, which he invented and then shared with Hormel beginning in 2007 after the parties signed the MCDA. *Unitherm*, 2016 U.S. Dist. LEXIS 96938, at **1-2, 14-15. His knowledge based on interactions between HIP and Hormel is important to assisting counsel on issues including infringement, willful infringement, and the "objective indicia" of non-obviousness. *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1378-79 (explaining the importance of objective-indicia evidence, *e.g*. unsolved needs, praise by others, copying, unexpected results and commercial success.) Mr. Howard's involvement also is important in view of Hormel's pattern of belatedly and begrudgingly producing far less than all required "core technical documents," as explained in HIP's letter. Finally, Hormel accuses Mr. Howard in this case of failing to tell the USPTO that Hormel employees are co-inventors, while seeking to withhold Hormel's evidence from Mr. Howard. *See* Ex. 10. Mr. Howard should have the right to fully confront such charges. *See also Unitherm*, 2016 U.S. Dist. LEXIS 96938 at *14-15; *HIP*, 888 F.3d at 343.

Hormel has not met its burden of demonstrating any competitive harm it would suffer and HIP would be unduly prejudiced by denying Mr. Howard access. Hormel's speculation that Mr. Howard may disclose information to competitors is both unsupported and contrary to the facts, given that Mr. Howard is now fully retired and also is barred by a non-compete agreement. Hormel's reliance on the Protective Order in the Minnesota case also is misplaced due to Mr. Howard's changed circumstances and the absence of a Prosecution Bar in that prior order. Indeed, Hormel used the Minnesota Protective Order as a weapon to keep Mr. Howard from having access to key documents, a pattern Hormel is likely to repeat here. . Moreover, if the Court grants Mr. Howard access to all Hormel technical information, HIP will not oppose entry of Hormel's proposed Prosecution Bar. There is thus no basis to exclude him.

Otherwise, this case does not require a prosecution bar. Hormel did not obtain one in the prior lawsuit, while conceding Mr. Brown was counsel of record in that case. There is less reason for one here. Mr. Brown is not a "competitive decisionmaker" notwithstanding Hormel's conclusory assertions to the contrary.

Hormel also glosses over how it intends to use protective order provisions to block HIP from using its own documents that it re-produced from the Minnesota Action, and which HIP has declassified by letter to Hormel. Defendants went so far as to accuse Mr. Brown, albeit unsuccessfully, of violating the Minnesota Protective Order by filing the two Delaware complaints. And they continue to seek to hold up these documents by objecting to their de-designation. But when asked how Hormel could assert confidentiality as to documents from HIP's own files, Hormel only identified a few checks that it had paid to HIP in the ordinary course of business (not confidential, but HIP anyway agreed to redact pursuant to Fed. R. Civ. P. 5.2). Hormel otherwise failed to identify any cognizable confidentiality Hormel interest in the Unitherm documents, despite having extensive familiarity with and knowledge of these documents from the Minnesota Action. Hormel should be barred from asserting confidentiality over documents from HIP's own files given that any documents shared between HIP and Hormel are no longer confidential under the long-expired MCDA and JDA. *Unitherm*, 2016 U.S. Dist. LEXIS 96938 at **5 & 10 n.2.

The Honorable Colm F. Connolly
October 11, 2018

  **Re-Production of Documents:** Hormel improperly accuses HIP of making a "document dump" of its production from the Minnesota Action. What Hormel neglects to disclose is, far from being "irrelevant and nonresponsive," Hormel's inventorship counterclaims (which HIP has sought to dismiss based on, inter alia, collateral estoppel principles (D.I. 27, 38)), are nearly identical to the ownership claims that Hormel brought and lost in the Minnesota Action. In addition, HIP documents from the first case relate to HIP's claims of willful infringement, non-obviousness, and injury to HIP. Thus, at least the vast majority of documents Unitherm produced in the Minnesota case are relevant to claims and defenses in this case.[2] Second, Hormel neglects to disclose that, because it has the same lead counsel in this action as the Minnesota Action, counsel is *already fully familiar with these documents* that it used in litigation through an Eighth Circuit appeal.[3] Indeed, Hormel's lead counsel billed Hormel $1.3 million in the Minnesota Action, including for reviews and summaries of Unitherm documents. This case is thus unlike the single case relied on by Hormel (despite its claim of "courts across the country" barring such practices) where, a party produced 7800 pages and then identified them en masse as Rule 33(d) interrogatory responses. *Plan Pros, Inc. v. Torczon*, 2009 WL 3063017, at *4 (D. Neb. Sept. 18, 2009). *Cf.* Ex. 11 (HIP responses to Interrogatory Nos. 5-7). Indeed, Hormel does not even try to explain how there can be a "burden and cost to review" documents it has already reviewed and litigated. Indeed, the only undue burden here is the burden Hormel seeks to impose on HIP to parse through and reduce this relatively small universe to a subset (at the risk of omitting something HIP may wish to use as the case evolves). Hormel's make-work demand should be rejected.

  **Hormel's Metadata complaints:** HIP is perplexed as to why Hormel is raising this issue as HIP already advised that it has produced all metadata to the extent it exists, consistent with ¶ 5(g) of the ESI Default Standard. HIP has repeatedly told Hormel that metadata does not exist for some documents because they were maintained only as hard copies in HIP's files. *See, e.g.*, Ex. 12 (2007 emails between Hormel and Unitherm). HIP complied with its obligations in this case under the ESI default order.[4] Importantly, Hormel does not even try to explain the relief it is seeking (and does not attach a form of Order as the Court's procedures require), instead merely assuming (despite being advised otherwise) that metadata is being improperly withheld. This additional unfounded request should be rejected.

            Respectfully,

            */s/ Karen Jacobs*

            Karen Jacobs (#2881)

---

[2]  Hormel asserts – with no support – that 60% of the production is irrelevant but does not explain why that is so. Perhaps this is because of Hormel's untenable view of what is relevant.

[3]  And far from being a "dump," the universe here consists of less than 60,000 pages, which is not unduly burdensome considering the scope of the dispute and a product that is expected to generate billions of dollars in revenue for Hormel over the life of the '610 patent.

[4]  HIP initially had difficulty re-producing some metadata in accordance with the Delaware default standard because of the non-standard load files demanded by Hormel in Minnesota.