# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HIP, INC., | ) |
|         Plaintiff, | ) |
| | ) C.A. No. 18-615-CFC |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| HORMEL FOODS CORPORATION, | ) |
| HORMEL FOODS CORPORATE SERVICES, | ) |
| LLC, OSCEOLA FOOD LLC, ROCHELLE | ) |
| FOODS, LLC and DOLD FOODS, LLC, | ) |
| | ) |
|         Defendants. | ) |

## OPENING BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Tel: (612) 492-7000

Dated: January 18, 2019
6062128 / 45097

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants Hormel Foods Corporation, Hormel Foods Corporate Services, LLC, Osceola Food LLC, Rochelle Foods, LLC and Dold Foods, LLC*

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................... 1

II.  NATURE AND STAGE OF THE PROCEEDINGS ........................................... 2

III. SUMMARY OF ARGUMENT ............................................................................. 2

IV.  BACKGROUND .................................................................................................... 3

    A.  Most of the Pretrial Proceedings Remain Outstanding. .......................... 3

    B.  HIP and Defendants Are Not Competitors. .............................................. 3

    C.  Hormel's IPR Petition. ................................................................................ 4

ARGUMENT ...................................................................................................................... 5

I.   LEGAL STANDARD. ............................................................................................ 5

II.  A STAY OF THIS LITIGATION WITHOUT WAITING FOR THE PTAB'S INSTITUTION DECISION IS APPROPRIATE. ............................................... 5

    A.  A Stay Will Resolve the Case or Simplify the Issues for Trial. .............. 6

    B.  The Early Stage of This Case Favors a Stay. .......................................... 10

    C.  A Stay Will Not Unduly Prejudice or Tactically Disadvantage HIP. ... 11

        1.  HIP Does Not Compete With Defendants. ................................. 11

        2.  The Timing of the Review and Stay Requests Show Defendants Are Acting in Good Faith. .......................................................... 12

        3.  The IPR Is Likely To Be Instituted and Proceed to Trial. ........ 13

CONCLUSION ................................................................................................................ 14

i

# **TABLE OF AUTHORITIES**

**CASES**

*AT&T Intellectual Prop. I LP v. Cox Commc'ns, Inc.*,
 C.A. No. 14-1106-GMS, D.I. 161 (D. Del. Sept. 24, 2015) ....................................................... 9

*Aylus Networks, Inc. v. Apple Inc.*,
 856 F.3d 1353 (Fed. Cir. 2017) ................................................................................................. 9

*Bonutti Skeletal Innovations, LLC v. Zimmer Holdings, Inc.*,
 C.A. Nos. 12-1107, 12-1109, 12-1110-GMS,
 2014 WL 1369721 (D. Del. Apr. 7, 2014) ......................................................................... 11, 12

*Boston Sci. Corp. v. Cordis Corp.*,
 777 F. Supp. 2d 783 (D. Del. 2011) ........................................................................................ 11

*CallWave Commc'ns, LLC v. AT&T Mobility, LLC*,
 C.A. No. 12-1701-RGA, 2015 WL 1284203 (D. Del. Mar. 18, 2015) ............................... 5, 12

*Canatelo LLC v. Axis Commc'ns*,
 C.A. No.13-1227-GMS, 2014 WL 12774920 (D. Del. May 14, 2014) .......................... 7, 9, 12

*Chestnut Hill Sound Inc. v. Apple Inc.*,
 C.A. No. 15-261-RGA, D.I. 46 (D. Del. Dec. 3, 2015) ............................................................ 6

*CRFD Research, Inc. v. Dish Network Corp.*,
 C.A. Nos. 14-315, 14-314, 14-313, 14-64-GMS, D.I. 49 (D. Del. June 4, 2015) .................... 6

*Ever Win Int'l Corp. v. Radioshack Corp.*,
 902 F. Supp. 2d 503 (D. Del. 2012) ..................................................................................... 8, 13

*In re Bear Creek Techs.*,
 MDL No. 12-md-2344, 2013 WL 3789471 (D. Del. July 17, 2013) ...................................... 12

*Krippelz v. Ford Motor Co.*,
 667 F.3d 1261 (Fed. Cir. 2012) ................................................................................................. 9

*Miics & Partners Am. Inc. v. Toshiba Corp.*,
 C.A. No. 14-803-RGA, 2015 WL 9854845 (D. Del. Aug. 11, 2015) .............................. passim

*Neste Oil OYJ v. Dynamic Fuels, LLC*,
 C.A. No. 12-1744-GMS, 2013 WL 3353984 (D. Del. July 2, 2013) ................................. 6, 11

*Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*,
 C.A. No. 12-1461-LPS-CJB, 2014 WL 3819458 (D. Del. Jan. 15, 2014) ...................... passim

*Softview LLC v. Apple Inc.*,
    C.A. No. 12-989-LPS, No. 10-389-LPS, 2013 WL 4757831 (D. Del. Sept. 4, 2013) ......... 7, 8

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014) .................................................................................................. 8


**STATUTES**

35 U.S.C. § 314 ................................................................................................................................. 4, 8

35 U.S.C. § 315(b) ...................................................................................................................... 8, 12, 13


**REGULATIONS**

37 C.F.R. § 42.100(c) .......................................................................................................................... 4

37 C.F.R. § 42.107 ............................................................................................................................... 4

## I.  INTRODUCTION

Defendants Hormel Foods Corporation, Hormel Foods Corporate Services, LLC, Osceola Food, LLC, Rochelle Foods, LLC, and Dold Foods, LLC (collectively, "Defendants") move to stay this litigation pending resolution of the *Inter Partes* Review ("IPR") petition filed by Defendant Hormel Foods Corporation ("Hormel") on December 19, 2018.  Hormel's IPR asks the United States Patent and Trademark Office's ("PTO") Patent Trial and Appeal Board ("PTAB") to invalidate all three claims of U.S. Patent No. 9,510,610 (the "'610 Patent"), the sole patent asserted in this litigation.

The PTAB has not yet instituted trial.  And while in some cases courts postpone their decision to stay pending IPR until after the PTAB's institution decision, there are circumstances where pre-institution stays are warranted, as this Court has recognized.  This case presents one of those circumstances.  The Court should stay this case and defer to the PTAB given that Hormel's IPR may be case dispositive.  If Hormel were to prevail on the IPR, HIP's case would end.  HIP, as a non-practicing entity that does not make or sell any products and does not compete with Defendants, will suffer no prejudice or tactical disadvantage by a stay.  In fact, HIP will suffer no competitive harm as the result of a stay.  Further, this action is in its early stages and there is still a substantial amount of work that needs to be done.  If this case is not stayed, the Court and the parties will likely waste time and resources in claim construction, depositions, expert discovery, and dispositive motions that could be rendered moot depending on the IPR resolution.

Defendants respectfully request that the Court stay this case pending the IPR of the '610 Patent, or in the alternative, enter a stay for six months and schedule a status conference to follow shortly thereafter at which the Court and the parties can further address whether a continuing stay is appropriate, taking into account the PTAB's decision on institution.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

On April 24, 2018, Plaintiff HIP, Inc. ("HIP") filed this action for patent infringement regarding the '610 Patent. D.I. 1. Defendants filed their original answer and counterclaims for inequitable conduct, invalidity, and correction of inventorship on June 15, 2018. D.I. 11. On July 6, 2018, HIP moved to dismiss Defendants' counterclaims and to strike certain affirmative defenses. D.I. 14-15. On July 16, 2018, Defendants made clear in the Joint Status Report that they would be challenging the '610 Patent's validity through an IPR and would be filing a motion to stay the proceedings in this case. D.I. 19, p. 9.

On July 26, 2018, Defendants filed their amended answer and counterclaims as a matter of right, pursuant to Rule 15. D.I. 21. On August 9, 2018, HIP moved to dismiss Defendants' inequitable conduct counterclaim. D.I. 26-27. Defendants filed their opposition to HIP's motion on August 23 and HIP filed its reply on September 6. D.I. 32, 38. On November 30, 2018, Defendants moved to amend their answer and counterclaims within the Court's deadline and HIP opposed Defendants' motion. *See* D.I. 69-70, 79, 81.

On November 14, 2018, the Court entered a Revised Scheduling Order. D.I. 60. Document discovery is ongoing, but no depositions have been taken. On December 19, 2018, Hormel filed a petition for IPR of the '610 Patent, which seeks to invalidate every claim as being unpatentable under 35 U.S.C. §§ 102 and 103, for anticipation and obviousness. On January 17, 2019, the PTAB accorded Hormel's IPR petition the December 19 filing date.

## III.    SUMMARY OF ARGUMENT

The unique facts of this case justify an immediate stay of the entire case before the PTAB issues its IPR institution decision. HIP is a non-practicing entity and will not suffer undue prejudice or a tactical disadvantage from a stay of the case, which is still in the early stages.

2

Hormel's IPR petition challenges all three claims of the only patent at issue in this case. Should an IPR be instituted, as is statistically likely, a PTAB invalidity decision will end HIP's case. At a minimum, the PTAB's decision will simplify the case by providing guidance on claim scope and reduce the burden of litigation.

## IV.  BACKGROUND

### A.  Most of the Pretrial Proceedings Remain Outstanding.

The parties have started engaging in discovery, including the exchange of initial infringement and invalidity contentions, a joint claim construction chart, and the production of responsive documents. Declaration of Kurt J. Niederluecke, dated January 18, 2019 ("Niederluecke Decl."), ¶ 2. However, the discovery deadline is not until July 12, 2019, and most of the discovery effort remains. D.I. 60. HIP's motion to dismiss Defendants' inequitable conduct counterclaim is currently pending before the Court as well Defendants' motion to amend their previously-pled inequitable conduct claim. *See* D.I. 26-27, 69-70. Not a single deposition has been taken in this case. The parties are in the process of starting claim construction briefing, but the *Markman* hearing is three months away. Niederluecke Decl., ¶ 3; D.I. 60; p. 6. No expert discovery has been conducted and the trial in this matter is not scheduled until June 15, 2020 – a year and a half away. Niederluecke Decl., ¶ 3; D.I. 60, p. 9. Defendants made it known very early in this case that Hormel would be filing an IPR petition to invalidate the claims in the '610 Patent and would be seeking a stay of this litigation. D.I. 19, p. 9.

### B.  HIP and Defendants Are Not Competitors.

Defendants produce food and meat products, including bacon. Plaintiff HIP is a non-practicing entity. David Howard is the president and sole employee of HIP and is "retired." D.I. 50. Indeed, Howard is no longer in the business of making equipment for cooking meat products

and cannot compete in this industry. *Id.* HIP does not make or sell any products. In fact, even though the '610 Patent claims a process for producing precooked bacon slices, HIP has never commercially made or sold any bacon products. Simply put, HIP and Defendants are not competitors.

### C.     Hormel's IPR Petition.

On December 19, 2018, Hormel filed a petition for IPR requesting review of all three claims of the '610 Patent. *See* Niederluecke Decl., Ex. A. The '610 Patent is generally directed to "processes for continuously cooking bacon slices to produce precooked bacon strips and other precooked sliced bacon products." *Id.*, p. 3. Claims 1-3 of the '610 Patent are process claims. *Id.* As the IPR petition demonstrates, multiple prior art references invalidate each of the claims in the '610 Patent. *See id.*, pp. 15-65. The IPR petition includes prior art references and new grounds of invalidity that were not considered by the PTO during prosecution of the '610 Patent, principally due to HIP's inequitable conduct. *Id.*; D.I. 69-3, pp. 29-61.

On January 17, 2019, the PTAB accorded Hormel's IPR petition its December 19, 2018 filing date. Niederluecke Decl., Ex. B. The PTAB is required to issue its decision regarding whether it will institute review within six months, no later than July 17, 2019. *See* 35 U.S.C. § 314; 37 C.F.R. § 42.107. If the IPRs are instituted as anticipated, the PTAB should issue its final decision regarding the validity of the challenged claims within one year after institution, no later than July 2020. *See* 37 C.F.R. § 42.100(c). HIP can expedite the PTAB's institution and final decisions by filing its preliminary response to the IPR petition in less than the three months allocated by the rules. *See* 35 U.S.C. § 314; 37 C.F.R. § 42.107.

The parties met and conferred and HIP unequivocally stated it would oppose Hormel's motion to stay – both pre-institution and post-institution. *See* Niederluecke Decl., ¶ 6. Thus, the present motion seeks an immediate stay of this case pending resolution of the IPR petition.

## ARGUMENT

### I.   LEGAL STANDARD.

A three factor test is used to decide whether a stay is appropriate for a case pending IPR. Courts analyze: "(1) whether granting the stay will simplify the issues for trial; (2) whether discovery is complete and a trial date is set; and (3) whether granting a stay would cause the non-moving party to suffer undue prejudice from any delay, or a clear tactical disadvantage." *CallWave Commc'ns, LLC v. AT&T Mobility*, *LLC*, C.A. No. 12-1701-RGA, 2015 WL 1284203, at *1 (D. Del. Mar. 18, 2015). Here, all three factors support the requested stay.

### II.  A STAY OF THIS LITIGATION WITHOUT WAITING FOR THE PTAB'S INSTITUTION DECISION IS APPROPRIATE.

In some cases, this Court has waited until the issuance of the IPR institution decision before granting a stay. The unique facts of this case, however, favor an immediate stay of the case before the PTAB issues its institution decision. Given that there is only one patent at issue with just three claims – which are all being challenged in the IPR petition – deferring to the PTAB at this early stage of the litigation is justified, especially when there is no prejudice to HIP given that it is a non-practicing entity.

This Court has previously granted pre-institution stays where such a stay would similarly promote judicial efficiency. *See, e.g.*, *Miics & Partners Am. Inc. v. Toshiba Corp.*, C.A. No. 14-803-RGA, 2015 WL 9854845, at *1 (D. Del. Aug. 11, 2015) (granting pre-institution stay); *CallWave,* 2015 WL 1284203, at *1 (same); *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, C.A. No. 12-1461-LPS-CJB, 2014 WL 3819458, at *2 (D. Del. Jan. 15, 2014)

5

(same); *Neste Oil OYJ v. Dynamic Fuels, LLC*, C.A. No. 12-1744-GMS, 2013 WL 3353984, at *2 (D. Del. July 2, 2013) (same); *Chestnut Hill Sound Inc. v. Apple Inc.*, C.A. No. 15-261-RGA, D.I. 46 (D. Del. Dec. 3, 2015) (staying the case until at least the PTAB decides whether to institute an IPR) (Niederluecke Decl., Ex. C). In the unlikely event that the PTO denies Hormel's IPR petition, the stay will be short and will not waste any judicial resources. *See CRFD Research, Inc. v. Dish Network Corp.*, C.A. Nos. 14-315, 14-314, 14-313, 14-64-GMS, D.I. 49, at *2 n.3 (D. Del. June 4, 2015) (granting pre-institution stay and stating that "[a]t worst, if the PTAB denies review, the parties will only endure a brief delay") (Niederluecke Decl., Ex. D).

Hormel's IPR petition has the potential to dispose of HIP's entire case against Defendants and, at a minimum, will narrow the litigation. A stay may relieve the parties and the Court of the substantial burdens of claim construction briefing and a claim construction hearing, expert discovery, dispositive motions practice, pretrial proceedings, and a jury trial. As explained below, an immediate stay would promote judicial economy and avoid potentially wasteful discovery efforts.

### A. A Stay Will Resolve the Case or Simplify the Issues for Trial.

There are myriad ways in which a stay pending the outcome of an IPR can simplify issues for trial. *Neste Oil OYJ*, 2013 WL 3353984, at *4 (granting pre-institution stay and finding that staying a case pending IPR can simplify the issues for trial in numerous ways). As another judge in this District has noted in granting a pre-institution stay, "there are multiple possible outcomes" of an IPR proceeding, and each of them simplify the litigation in at least some manner. *Princeton Digital*, 2014 WL 3819458, at *2. If all asserted claims are found invalid by the PTAB, "the 'litigation would be simplified because it would be concluded.'" *Id*.

(quoting *Softview LLC v. Apple Inc.*, C.A. Nos. 12-989-LPS, 10-389-LPS, 2013 WL 4757831, at *1 (D. Del. Sept. 4, 2013)). If, instead, only a subset of the asserted claims are found invalid, "that finding would reduce the number of issues left to be litigated," because there would be fewer claims to evaluate. *Id*. Even if no claims are found to be invalid, "litigation should be somewhat simplified due to the estoppel effect that the IPR proceeding would have . . . as well as due to insight that the Court could gain from the PTO's review process." *Id*. Every example of how a stay can simplify issues for trial listed above can be accomplished by granting a stay in the present case.

First, the sole fact that the IPR has not yet been instituted is not dispositive, and this District has granted many pre-institution stays in circumstances that are very similar to this case. *See, e.g.*, *Canatelo LLC v. Axis Commc'ns,* C.A. No.13-1227-GMS, 2014 WL 12774920, at *2 n.3 (D. Del. May 14, 2014) ("The Patent Trial and Appeal Board ("PTAB") has yet to indicate whether it will grant the defendants' petitions, but this is not dispositive."). For example, in granting a pre-institution stay, the court in *Miics* granted a pre-institution stay where: (1) the "defendants each filed inter partes review petitions with the PTAB on all of the asserted claims"; (2) "Plaintiffs are non-practicing entities. They do not compete with the defendants"; and (3) "there have been no depositions" and "expert discovery is a long way off." *Miics & Partners Am. Inc.*, 2015 WL 9854845, at *1.

Likewise, a pre-institution stay is appropriate in this case because: (1) Hormel's IPR petition asks the PTAB to invalidate all three claims of the '610 Patent, the sole patent asserted in this litigation; (2) HIP is a non-practicing entity and does not compete with Defendants; and (3) no depositions have been taken, no *Markman* hearing has occurred, and expert discovery is a long way off.

7

Moreover, even putting aside the strength of Hormel's IPR petition, it is statistically likely that the PTAB will not only institute an IPR proceeding, but cancel claims from the '610 Patent as well. *See* Niederluecke Decl., Ex. E ("Trial Statistics: IPR, PGR, CBM," Dec. 2018), p. 10. Such a result could simplify, if not eliminate altogether, issues for trial. According to the PTO, in FY2018 the PTAB instituted approximately 60% of the petitions before it, whereas in the first quarter of FY2019 the PTAB has instituted 64% of the IPR petitions. *Id.*, p. 6. These statistics mean the PTAB identified "a reasonable likelihood," 35 U.S.C. § 314(a), that at least one claim was invalid in nearly two of every three patents challenged. *Id*. Once an IPR petition has been instituted, the PTAB has found at least some claims unpatentable in 81% of the cases that reach a final written decision. *Id.*, p. 10. If all claims are cancelled after an instituted trial (which happens 64% of the time for IPRs that reach a final written decision), HIP's infringement case will be disposed of entirely. *Id.* These statistics support a "fair inference that the issues in this case are apt to be simplified and streamlined to some degree as a result of the [IPR] proceedings." *Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 506 (D. Del. 2012).

Second, granting a stay in this case will undeniably simplify and streamline the issues. Hormel's IPR petition covers all asserted claims of the patent-in-suit and thus could dispose of HIP's entire case: "the ultimate simplification of issues." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014); *see also Softview*, 2013 WL 4757831, at *1. Even if some of the asserted claims ultimately are found valid, Defendants will be estopped from asserting invalidity defenses on "any ground that [Hormel] raised or reasonably could have raised during that *inter partes* review." 35 U.S.C. § 315(e)(2). Furthermore, in the unlikely event that the PTAB denies institution or confirms all claims, its written opinion will provide

8

guidance on claim scope and validity.  *See, e.g.*, *Canatelo LLC*, 2014 WL 12774920, at *2 n.3 ("Should the claims survive the IPR process, the court will still benefit from the PTAB's expertise."); *AT&T Intellectual Prop. I LP v. Cox Commc'ns, Inc.*, C.A. No. 14-1106-GMS, D.I. 161, at *3 n.4 (D. Del. Sept. 24, 2015) ("The results of the IPR may affect not only validity of the asserted claims, but also their scope.") (Niederluecke Decl., Ex. F).

In addition, statements or admissions made by HIP in the IPR proceedings may also impact the scope of the claims at issue.  *See, e.g.*, *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) ("[S]tatements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer."); *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1266 (Fed. Cir. 2012) (holding that a "patentee's statements during reexamination can be considered during claim construction, in keeping with the doctrine of prosecution disclaimer").  As a result, the file history of the '610 Patent and the scope of the claims will be in flux until completion of the IPR.  Thus, it makes sense to stay this case in its entirety until completion of the IPR proceeding so that this Court will have available the complete intrinsic record of the '610 Patent before taking up claim construction.  *See, e.g.*, *Canatelo*, 2014 WL 12774920, at *2 n.3 ("Should the PTAB deem the patents-in-suit unpatentable or narrow their scope, the court's resources will be conserved by expending fewer resources on claim construction or avoiding the claim construction process altogether.").

The PTAB's review of Hormel's IPR petition will simplify the issues for trial and may obviate the need for an infringement trial altogether.  Therefore, this factor weighs strongly in favor of granting a stay.

### B. The Early Stage of This Case Favors a Stay.

"Motions to stay [pending IPRs] are most often granted when the case is in the early stages of litigation." *Princeton Digital*, 2014 WL 3819458, at *3. "Granting such a stay early in a case can be said to advance judicial efficiency and 'maximize the likelihood that neither the Court nor the Parties expend their assets addressing invalid claims.'" *Id.* (internal citations omitted).

Here, this case is still in its early stages and much work remains to be done that could be averted by a stay. In fact, there is more work ahead of the parties and the Court than behind the parties and the Court. There are many resource-intensive events that have yet to take place. As set forth above, fact discovery has not concluded, no depositions have been taken, claim construction briefing is not completed, the Court has not conducted a *Markman* hearing, expert discovery has not started, the parties have not yet reached dispositive motion practice, and a trial is a year and half away. Thus, the second factor heavily favors a stay. *See, e.g.*, *Miics & Partners Am. Inc.*, 2015 WL 9854845, at *1 (granting pre-institution stay and finding that "[w]hile discovery has started and there are trial dates, there have been no depositions, claim construction briefing has not started (although it is about to), and expert discovery is a long way off. The case is relatively young. The major expenses of the parties are yet to come."); *Princeton Digital*, 2014 WL 3819458, at *3-4 (second factor "favors a stay" even before PTAB institution where discovery had begun, certain initial disclosures had been exchanged, plaintiff's preliminary infringement contentions had been served, and an early *Markman* proceeding had been held).

The requested stay would prevent the parties from spending time and money litigating the asserted claims that may be invalidated or otherwise removed from the case as result of the IPR.

Moreover, the Court has not yet had to spend its time on a claim construction hearing or the myriad of other proceedings that precede trial and that may be mooted by the IPR. In view of the substantial amount of work that lies ahead for the parties and the Court, a stay is appropriate in this case.

### C. A Stay Will Not Unduly Prejudice or Tactically Disadvantage HIP.

Granting a stay will not cause HIP "undue prejudice" and will not "place it at a clear tactical disadvantage." *Neste Oil OYJ*, 2013 WL 3353984, at *2. Although staying this case pending the institution and/or resolution of the IPR proceedings may prolong the final disposition of this dispute, "[p]otential delay does not in itself establish undue prejudice to the non-movant." *Bonutti Skeletal Innovations, LLC v. Zimmer Holdings, Inc.*, C.A. Nos. 12-1107, 12-1109, 12-1110-GMS, 2014 WL 1369721, at *2 (D. Del. Apr. 7, 2014). "In order to best gauge whether granting a stay would cause the non-movant undue prejudice or place it at a tactical disadvantage, the court weighs a variety of subfactors. These include 'the timing of the request for reexamination, the timing of the request for stay, the status of the reexamination proceedings, and the relationship of the parties.'" *Id.* (quoting *Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011)). The balance of these factors further supports the need for a stay.

#### 1. HIP Does Not Compete With Defendants.

The relationship between the parties strongly favors a stay. It is undisputed that HIP is a non-practicing entity that does not compete with Defendants. HIP does not make or sell any products, let alone bacon products. HIP's president and sole employee, David Howard, is retired and cannot compete in the industry. D.I. 50. There is nothing in HIP's complaint to suggest that HIP cannot be adequately compensated by money damages. D.I. 1.

11

HIP's status as a non-practicing entity weighs in favor of a stay because HIP would suffer no harm in the marketplace while the stay is in place and a stay would not affect HIP's claim for money damages. *See, e.g.*, *Canatelo*, 2014 WL 12774920, at *1 n.2 ("The relationship of the parties favors granting a stay here since Canatelo is a non-practicing entity and, by its own admission, does not compete with the defendants."); *Miics & Partners,* 2015 WL 9854845, at *1 ("Plaintiffs are not competitors of the defendants, and despite requests for injunctive relief, are realistically looking only for monetary damages. It does not appear that they will suffer any undue prejudice if the motion [to stay] is granted."); *CallWave*, 2015 WL 1284203, at *1 ("[Plaintiff] is not a competitor of Defendants. Any purported harm that [Plaintiff] suffers from a stay can be fully compensated by monetary damages."); *In re Bear Creek Techs.*, MDL No. 12-md-2344, 2013 WL 3789471, at *2 (D. Del. July 17, 2013) (explaining that the plaintiffs' status as "a non-practicing entity comprised solely of the [patent]'s inventor" undermined its prejudice assertions).

### 2. The Timing of the Review and Stay Requests Show Defendants Are Acting in Good Faith.

Hormel filed its petition for IPR well before the one-year statutory deadline mandated by the AIA. *See* 35 U.S.C. § 315(b). Indeed, HIP has known from the early stages of this case that Defendants were going to be filing an IPR and seeking a stay of this litigation. D.I. 19, p. 9. Furthermore, the promptness of Defendants' filing of the IPR petition and this motion to stay demonstrates how Defendants have acted in good faith. "The more diligent a defendant is in seeking *inter partes* review, the less likely it is that the non-movant will be prejudiced by a stay or that the court will find the defendant's filing of the IPR petition to be a dilatory tactic." *Bonutti*, 2014 WL 1369721, at *2. HIP commenced the present action on April 24, 2018. D.I. 1. The IPR petition was filed on December 19, 2018 – four months before the applicable deadline

under 35 U.S.C. § 315(b). After allowing HIP time to review the IPR petition, Defendants asked HIP to join them in preserving resources by immediately moving to stay the litigation. HIP indicated it would oppose Defendants' motion to stay – regardless if the motion is filed before or after the PTAB institutes IPR. Niederluecke Decl., ¶ 6. The present motion to stay was filed shortly after the parties' meet and confer and one day after receiving notice that the IPR petition was accorded a filing date of December 19, 2018.

As evidenced by those prompt filings, the Court should find no improper dilatory motive behind Defendants' actions. *See Princeton Digital*, 2014 WL 3819458, at *4 (finding the third factor to favor a stay even though the IPR petitions were filed "almost a year to the day after Plaintiff filed the initial Complaint against it, and less than three months after the Scheduling Order issued"); *Ever Win*, 902 F. Supp. 2d at 508 ("[T]he less time that a party waits to file a motion to stay pending reexamination, the less that the movant's conduct gives rise to an inference that the delay in so doing was impermissibly tactical."). The IPR petition and this motion to stay "were made in a timely fashion, and therefore, these two 'timing' considerations weigh in favor of a stay." *Ever Win*, 902 F. Supp. 2d at 509. Moreover, there is little tactical disadvantage to HIP since the litigation is still at an early stage with a great deal of work left to be done.

> 3.  **The IPR Is Likely To Be Instituted and Proceed to Trial.**

As explained above, the PTAB's own statistics demonstrate it is quite likely to institute the IPR and proceed to trial. Indeed, in this technology area, the PTAB institutes trial proceedings in almost 70% of the cases. Niederluecke Decl., Ex. E, p. 7 (reporting an institution rate of 69% for mechanical and business method technology area). Thus, although the PTAB has not yet instituted Hormel's IPR petition, statistics show that it likely will, and all other

considerations relevant to the third factor – including the relationship of the parties, the timing of Hormel's petition, and the timing of the request for stay – strongly favor a stay.

## CONCLUSION

Hormel's IPR seeks to invalidate all three claims of the sole patent asserted in this litigation. A stay until completion of the IPR could end HIP's case against the Defendants or at least simplify the issues in this case for trial. A stay will not unduly prejudice HIP because HIP is a non-practicing entity that does not compete with Defendants. Discovery is in its early stages and much work remains to be done that could be avoided by a stay. Accordingly, Defendants respectfully ask the Court to stay any further proceedings in the matter pending the PTAB's resolution of Hormel's IPR petition. In the alternative, Defendants request that the Court enter a stay for six months and schedule a status conference shortly thereafter where the Court and the parties can further address the stay, taking into account the PTAB's decision on institution.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Kurt J. Niederluecke
Timothy M. O'Shea
Laura L. Myers
Barbara Marchevsky
FREDRIKSON & BYRON P.A.
200 South Sixth Street, Suite 4000
Minneapolis, MN 55402
Tel: (612) 492-7000

Dated: January 18, 2019
6062128 / 45097

By: /s/ Stephanie E. O'Byrne
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendants Hormel Foods Corporation, Hormel Foods Corporate Services, LLC, Osceola Food LLC, Rochelle Foods, LLC and Dold Foods, LLC*