IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-615 (CFC) |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | REDACTED - PUBLIC VERSION |
| HORMEL FOODS CORPORATE | ) | |
| SERVICES LLC, OSCEOLA FOOD, LLC, | ) | |
| ROCHELLE FOODS, LLC, and | ) | |
| DOLD FOODS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO STAY PENDING *INTER PARTES* REVIEW**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com
*Attorneys for HIP, Inc.*

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP 1700
Pacific Avenue, Suite 2650 Dallas,
TX  75201
(214) 272-0958

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW, P.L.L.C.
2700 N. Hemlock Ct., Suite 111 E
Broken Arrow, OK  74012

Original Filing Date: February 1, 2019
Redacted Filing Date: February 8, 2019

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

I.      INTRODUCTION ..................................................................................................... 1

II.     NATURE AND STAGE OF PROCEEDINGS ......................................................... 2

III.    SUMMARY OF ARGUMENT ................................................................................. 2

IV.     COUNTERSTATEMENT OF FACTS .................................................................... 3

V.      LEGAL STANDARD ............................................................................................... 6

VI.     ARGUMENT ............................................................................................................ 7

        A.      The Current Stage of the Case Weighs Against a Stay ................................. 7

        B.      A Stay Would Unduly Prejudice HIP ........................................................... 9

                1.      The Timing Factors and the Status of the Review Proceedings ................. 9

                2.      The Relationship Between the Parties ....................................... 10

                3.      Undue Prejudice to HIP ........................................................... 12

                4.      Tactical Disadvantages for HIP ............................................... 16

        C.      A Stay Will  Not Simplify the Issues in Question and Trial ............................... 17

VII.    CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Microscopy Inc.*, *v. Carl Zeiss Microscopy, LLC*,
C.A. No. 15-516-LPS-CJB, 2016 U.S. Dist. LEXIS 17363
(D. Del. Feb. 11, 2016) ......................................................................................13, 18, 19

*In re Bear Creek Techs.*,
MDL No. 12-md-2344, 2013 U.S. Dist. LEXIS 103636
(D. Del. July 17, 2013) ...................................................................................................15

*Benefit Funding Sys. LLC v. Advance Am. Cash Advance Centers, Inc*.,
C.A. No. 12-801-LPS, 2013 WL 3296230
(D. Del. June 28, 2013) ..................................................................................................12

*CallWave Commc'ns, LLC v. AT&T Mobility, LLC*
C.A. No. 12-1701-RGA, 2015 U.S. Dist. LEXIS 33153
(D. Del. Mar. 18, 2015) ..................................................................................................15

*Canatelo LLC v. Axis Commc'ns,*
C.A. No 13-1227-GMS, 2014 U.S. Dist. LEXIS 161801
(D. Del. May 14, 2014) ...................................................................................................15

*Contour IP Holdings, LLC v. Go Pro, Inc*.,
C.A. No. 15-1108-LPS-CJB, 2016 U.S. Dist. LEXIS 95627
 (D. Del. July 14, 2016)....................................................................................................9

*Copy Prot. LLC v. Netflix, Inc.,*
C.A. No. 14-365-LPS, 2015 U.S. Dist. LEXIS 78270
(D. Del. June 17, 2015) ...............................................................................................8, 17

*Davol*, Inc. v. Atrium Med. Corp.,
C.A. No. 12-958-GMS,  2013 U.S. Dist. LEXIS 84533
(D. Del. June 17, 2013) ..................................................................................................18

*First Am. Title Ins. Co. v. McLaren LLC*, C.A.
No. 10-363 (GMS), 2012 U.S. Dist. LEXIS 31508
(D. Del. Mar. 9, 2012).....................................................................................................7

*Freeny v. Apple Inc.,*
2014 U.S. Dist. LEXIS 99595, 2014 WL 3611948
(E.D. Tex. July 22, 2014).................................................................................................17

*Gold v. Johns-Manville Sales Corp.*,
   723 F.2d 1068 (3d Cir. 1983) .......................................................................................7, 15

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*,
   C.A. No. 12-054-GMS-MPT, 2013 U.S. Dist. LEXIS 25015
   (D. Del. Feb. 25, 2013) .......................................................................................................16

*Indiana State Police Pension Trust v. Chrysler LLC*,
   556 U.S. 960 (2009) ..............................................................................................................7

*Intellectual Ventures I LLC v. Toshiba Corp.*,
   Civ. No. 13-453-SLR/SRF, 2015 U.S. Dist. LEXIS 63859
   (D. Del. May 15, 2015) ...........................................................................................12, 15, 16

*Invensas Corp. v. Samsung Elecs. Co.*,
   C.A. No. 17-1363-MN-SRF, 2018 U.S. Dist. LEXIS 169999
   (D. Del. Oct. 2, 2018)  ........................................................................................................18

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ..............................................................................................................7

*Miics & Partners Am. Inc. v. Toshiba Corp.*,
    C.A. No. 14-803-RGA, 2015 U.S. Dist. LEXIS 175193
   (D. Del. Aug. 11, 2015) .......................................................................................................15

*Neste Oil Oyj v. Dynamic Fuels, LLC*,
   C.A. No. 12-1744-GMS, 2013 U.S. Dist. LEXIS 92416
    (D. Del. July 2, 2013) .......................................................................................................7, 8

*Nken v. Holder*,
   556 U.S. 418 (2009) ..............................................................................................................7

*Pragmatus Mobile, LLC v. Amazon.com*, Inc.,
   C.A. No. 14–436–LPS, 2015 U.S. Dist. LEXIS 82256
   (D. Del. June 17, 2015) .......................................................................................................18

*Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*,
   C.A.No. 13–335–LPS–CJB, 2014 U.S. Dist. LEXIS 61555
   (D. Del. Jan. 15, 2014) .......................................................................................................18

*Rite-Hite Corp. v. Kelley Co.*,
   56 F.3d 1538 (Fed. Cir. 1995) ............................................................................................14

*SoftView LLC. v. Apple Inc.*,
   No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677
   (D. Del. Sept. 4, 2013) ..........................................................................................................8

*Software Research, Inc. v. Dynatrace LLC,*
    316 F. Supp. 3d 1112 (N.D. Cal. July 3, 2018) ................................................................14

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.,*
    193 F. Supp. 3d 345 (D. Del. 2016)...................................................................13

*TruePosition, Inc. v. Polaris Wireless, Inc.,*
    C.A. No. 12-646-RGA/MPT, 2013 WL 5701529
    (D. Del. Oct. 21, 2013) ...................................................................16

*Unitherm Food Systems, Inc. v. Hormel Foods Corporation,*
    No. 14-cv-4034 (JNE/BRT), 2016 U.S. Dist. LEXIS 96938
    (D. Minn. July 25, 2016)...................................................................6

*Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.,*
    546 U.S. 394 (2006)...................................................................10, 14

*Universal Secure Registry, LLC v. Apple Inc.,*
    C. A. No. 17-585-CFC-SRF,  2018 U.S. Dist. LEXIS 159539
    (D. Del. Sept. 19, 2018) ...................................................................18

## Statutes & Rules

35 U.S.C. § 102...................................................................19

35 U.S.C. § 103...................................................................19

35 U.S.C. § 112...................................................................19

35 U.S.C. § 122...................................................................10

35 U.S.C. § 282...................................................................13

35 U.S.C. § 311...................................................................13

35 U.S.C. § 316...................................................................13

35 U.S.C. § 325...................................................................19

37 CFR § 42.51...................................................................10

## I.     INTRODUCTION

As HIP, Inc. ("HIP") shows below, Defendants have not begun to meet their burden to show a case of "clear hardship or inequity" that would warrant a stay, particularly in the circumstances here where Hormel Foods Corporation ("HFC") only just filed its IPR (eight months into the litigation) and even an institution decision is six months away.  Defendants' motion to stay is just their most recent tactical maneuver in the long litigation history between the parties to delay rulings by the Court that HIP anticipates will weed out legally meritless defenses and allow HIP to have a jury decide infringement, willful infringement, validity and damages.  Indeed, the jury will have rendered its verdict before the PTAB even issues a final written decision, even if, *arguendo*, HFC's IPR were instituted.  Trial is set to begin on June 15, 2020, while the PTAB will have until about July 17, 2020 to issue a final decision.

Contrary to Defendants' conclusory arguments, a stay would cause HIP undue prejudice and material tactical disadvantage.  Unlike the IPR, which HFC has only just filed, this case is well under way.  Document production is substantially complete, claim construction briefing is underway, and depositions have been noticed.  Delaying the jury trial would be particularly unfair given the long and hard-fought litigation history between the parties relating to Defendants' wrongful misappropriation of HIP's patented invention.  Finally, having elected to use HIP's patented technology, Defendants are hardly in a position to complain about the costs of having to defend themselves against claims of willful patent infringement against much smaller HIP.  For all these reasons, the motion to stay should be denied.

## II.      NATURE AND STAGE OF THE PROCEEDINGS

HIP filed its complaint against Defendants (sometimes referred to as "Hormel") on April 24, 2018 for infringement of U.S. Patent No. 9,510,610 (the "'610 Patent"). D.I. 1. Defendants' original answer and counterclaims asserted not merely standard defenses/counterclaims for patent invalidity and non-infringement, but also included defenses/counterclaims alleging Hormel employees were co-inventors of the '610 Patent, and inequitable conduct. D.I. 11. HIP filed a partial motion to dismiss the inventorship/ownership counterclaim based on claim and/or issue preclusion and for lack of standing, in view of prior Minnesota and Eighth Circuit decisions. D.I. 15. HIP also moved to dismiss the inequitable conduct defenses/counterclaim for failing to allege facts supporting a plausible claim of materiality or intent to deceive the Patent Office. *Id*.

Defendants filed a first amended answer and counterclaims, adding further allegations relating to their inequitable conduct claim. D.I. 21. HIP filed a second motion to dismiss, D.I. 26, which was fully briefed as of September 6, 2018. D.I. 38. On November 30, 2018, the deadline for amendment of pleadings, Defendants filed a motion seeking leave to file yet another amended answer and counterclaims to re-plead inequitable conduct for a third time, which HIP opposed because the proposed amendments fail to cure the deficiencies of the previous attempts and would only further delay resolution of those motions. D.I. 79. That motion is pending. HIP overlays future deadlines in this case with those before the PTAB in its arguments below.

## III.      SUMMARY OF ARGUMENT

1.       Defendants cannot meet their burden to justify a stay before the PTAB has even decided whether to institute an IPR, particularly under the unique facts of this case. HIP would suffer undue prejudice and be placed at a clear tactical disadvantage if the Court were to grant a

stay, while an IPR final decision would not resolve all issues in this case, as Defendants admit. If the stay is denied, the case will be tried before the PTAB even issues a final decision, even, *arguendo*, if the PTAB institutes the IPR.  And, unlike the record before the PTAB, the Court and jury will have the benefit of a treasure trove of documentary evidence produced by Defendants in this case confirming non-obviousness of the '610 Patent claims, but which HIP cannot use in the IPR proceeding because of restrictions in the Protective Order.

2.      Defendants will not suffer a clear case of hardship or inequity if the stay is denied and the case is allowed to proceed to trial.  Parent Defendant HFC is a publicly-traded multi-billion dollar business.  Defendants chose to have HFC belatedly file an IPR petition after this litigation was well under way, and years into the dispute between the parties, using information gleaned from discovery and required exchanges of positions in this case to seek a substantial tactical advantage.  Defendants have an established track record of seeking to create seriatim roadblocks to a decision on the merits, even before this most recent maneuver.  Defendants cannot claim prejudice by dual track proceedings when they belatedly elected to pursue an IPR, whereas a stay would clearly harm HIP.

## IV.    COUNTERSTATEMENT OF FACTS

The case is far more developed than Defendants concede.  Declaration of Jerry R. Selinger ("Selinger Decl.), ¶ 2.  The parties have served and responded to interrogatories and have exchanged initial infringement contentions and initial invalidity contentions.  The parties have served document requests and generally completed document production, each having represented that it timely complied with the January 11, 2019 deadline for substantial completion of document production.  The parties have also produced a total of 14 depositions taken in the Minnesota case, and Defendants have served a notice of deposition for Mr. Howard.  The parties

have engaged in numerous meet-and-confer conferences to resolve discovery disputes relating to document production and interrogatory answers, and the Court held a discovery conference on October 12, 2018.  HIP served a document subpoena on Defendants' oven supplier, John Bean Technologies Corporation ("JBT"), and Defendants served eleven document subpoenas on third-party individuals and corporations.

The parties filed a joint claim construction chart, and HIP served its opening claim construction brief on January 17, 2019, the day before Defendants filed their motion to stay. D.I. 88.  The *Markman* hearing is set for April 9, 2019, discovery closes on July 12, 2019, and trial is scheduled to begin June 15, 2020.

HFC filed its IPR petition on December 19, 2018, eight months after this action was filed, incorporating HIP claim construction positions and other information Defendants had obtained in this case.  *See, e.g*.,  D.I. 89, Niederluecke Decl., Ex. A, pp. 10-11 & 11 n.2 (using HIP's position that the preambles are substantive limitations while disagreeing with that position); *id.,* p. 19 (using HIP's position about the meaning of "substantially air-free environment" while paying lip service to Defendants' different construction); *id.,* pp. 47-48 (discussing HIP's disclosed litigation position regarding prior conception and reduction to practice).  The PTAB delayed until January 17, 2019 in even according HFC a filing date for the IPR.

HIP has until April 17, 2019 to file a Preliminary Response, and the PTAB will then have until July 17, 2019 to decide whether to institute or decline to institute any aspect of the IPR proceeding.  If instituted, the PTAB will not be required to render a final decision until July 17, 2020.

HFC's IPR petition relies on two JBT references (Hwang '962 and McVeagh) as the linchpins of all invalidity arguments.  HIP believes the petition is defective because HFC fails to

include JBT as a real-party-in-interest, ████████████████████████████

████████████████████████████████. Selinger Decl., Ex. 1. Perhaps

that is why JBT's Gunawardena is HFC's technical expert, but that does not excuse non-joinder.

Even if HFC were to survive this procedural flaw, the PTAB is not likely to institute HFC's

petition because the petition relies on the same or substantially the same prior art as was before

the Examiner. Hwang '962 is a continuation-in-part of Hwang '120, and Defendants concede

Hwang '120 was considered by the Examiner. D.I. 89, Niederluecke Decl., Ex. A, pp. 7-9.

Hwang '962 does not add any disclosure of relevance to any of the claim limitations. And

McVeagh is not prior art to Mr. Howard's claimed invention. *See* D.I. 79, p. 7.

Further, McVeagh is at best cumulative to the prior art considered by the Examiner,

reflecting the type of unacceptable prior art processes described in HIP's 610 Patent. Unlike the

claims in the '610 Patent ("[a] process for continuously cooking and browning bacon slices in a

spiral oven …."), McVeagh describes an oven system requiring both a spiral oven and a linear

oven, McVeagh criticizes the browning capabilities of spiral ovens operating alone, and

McVeagh does not mention bacon, while the HIP '610 Patent claims define a process for

cooking sliced bacon resembling a pan-fried bacon product. Defendants, moreover, did not

consider McVeagh to be material. Hormel's lawyer wrote to HIP in September 2016, while the

'610 Patent was still pending at the Patent Office, pointing out what he contended was pertinent

prior art HIP also should disclose to the Patent Office. Hormel's counsel, however, made no

mention of McVeagh, despite Hormel's prior knowledge of that patent publication. And Hormel

did not disclose McVeagh to the PTO in connection with prosecution of its copy-cat '498 patent,

Selinger Decl., Ex. 3, although Defendants contend it is the patent under which Defendants make

their infringing Bacon 1 products.

Also, there is practical evidence of the non-obviousness of the claimed invention, in view of HFC's reliance on the JBT references and a JBT employee in the IPR.  In particular, in 2012, four years after the '610 Patent had been filed, Defendants required that JBT (including Mr. Gunawardena) visit Hormel to secretly reverse-engineer a Unitherm[1] spiral oven configured to practice the patented invention.  The Minnesota district court found Defendants had JBT do so because they sought to have JBT "'duplicate the [Unitherm] oven conditions' in [JBT's] own oven," after which Hormel planned to visit JBT "to determine if [JBT] can accurately duplicate the conditions to give them the same flavor and texture."  *Unitherm Food Systems, Inc. v. Hormel Foods Corporation*, No. 14-cv-4034 (JNE/BRT), 2016 U.S. Dist. LEXIS 96938 at *3 (D. Minn. July 25, 2016).

In all events, under the current schedule in this case, D.I. 60, and the timeline in the PTO, HIP will have a jury verdict before the PTAB issues a final decision.  The Court's claim construction rulings will long predate whatever final claim constructions appear in a July 2020 PTAB final decision, and will most likely predate even the summer 2019 PTAB decision as to whether or not to institute the IPR.  Indeed, the PTAB is unlikely to resolve claim construction disputes because HFC purports to apply its IPR references in a way that meets both HIP's and Defendants' claim construction positions.  D.I. 89, Niederluecke Decl., Ex. A (charts treating preambles as substantive limitations and purporting to apply Defendants' narrower constructions to limitations in the claim body).

## V.    LEGAL STANDARD

A party requesting a stay of litigation bears the burden of showing that a stay is appropriate.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 255-56 (1936).  "It is well settled that

---

[1] Unitherm is now HIP, Inc.

before a stay may be issued, the petitioner must demonstrate 'a clear case of hardship or inequity,' if there is 'even a fair possibility' that the stay would work damage on another party." *See Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983) (quoting *Landis*, 299 U.S. at 255). "'A stay is not a matter of right' . . . . It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" *Indiana State Police Pension Trust v. Chrysler LLC*, 556 U.S. 960 (2009) (quoting *Nken v. Holder,* 556 U.S. 418, 433-34 (2009)). The factors considered in resolving a motion to stay include: "'(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.'" *Neste Oil Oyj v. Dynamic Fuels, LLC*, C.A. No. 12-1744-GMS, 2013 U.S. Dist. LEXIS 92416, at *3-4 (D. Del. July 2, 2013) (quoting *First Am. Title Ins. Co. v. McLaren LLC*, C.A. No. 10-363 (GMS), 2012 U.S. Dist. LEXIS 31508, at *13 (D. Del. Mar. 9, 2012) (citations omitted)). The analysis is case-specific and all three factors weigh against a stay in this case**.**

## VI.   ARGUMENT

### A.   The Current Stage of the Case Weighs Against a Stay

As described above, this case was filed in April 2018, more than eight months ago. Since then, the parties have substantially completed document production, issued and responded to interrogatories and noticed depositions. The parties have invested significantly in this case, and discovery will be closed before the PTAB issues its institution decision. Claim construction briefing is underway, and a *Markman* hearing is scheduled for April 9, 2019. Trial is set for June 15, 2020. Selinger Decl., ¶¶ 2. Any Final Decision by the PTAB, assuming it even decides to institute an IPR, will issue about a month later. The Court has invested time in this litigation, including holding a discovery conference on October 12, 2018.

In *Neste Oil,* the court found the stage of the litigation weighed in favor of a stay because "no scheduling conference, no trial date has been set, and no discovery has taken place." *Neste Oil,* 2013 U.S. Dist. LEXIS 92416 at *15-16 (citations omitted). That is not the status of this case. By contrast, in *SoftView LLC. v. Apple Inc.*, the Court denied a stay even though a trial date had not been set and limited discovery had been conducted, noting that parties and the court had spent substantial time and resources on "scheduling and resolutions of discovery disputes, as well as Defendants' motions to sever, stay, and dismiss." No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677, at *11-12 (D. Del. Sept. 4, 2013). In *Copy Prot. LLC v. Netflix, Inc.,* the Court considered that, like here, "a trial date has been set for October 11, 2016 (around the same time as the IPR petition may be finally decided) and the parties have engaged in a substantial amount of discovery and are set to complete claim construction briefing shortly." 2015 U.S. Dist. LEXIS 78270 at *3 (D. Del. June 17, 2015). The Court ultimately decided that "this third factor weighs against granting a stay." *Id.* Considerable time and resources have been committed to this case by the parties and the Court.

The PTAB has until July 17, 2019 to decide whether to institute or decline the IPR proceeding until which time any arguments about simplification of proceedings are entirely speculative. Under the Scheduling Order, the following major deadlines are scheduled for completion before the PTAB enters a Decision on Institution:

- The Joint Claim Construction Brief is due on March 14, 2019

- The *Markman* hearing is set for April 9, 2019

- Discovery closes on July 12, 2019

D.I. 60. This is not to say there is not material work remaining, but much already has been done. Putting the fruits of those efforts aside for six or 18 months will be counterproductive under the

circumstances, particularly here where Defendants have known about the '610 Patent since its filing in January 2008, monitored its progress through the Patent Office, and yet waited to even file an IPR until eight months after HIP filed this action.

**B.      A Stay Would Unduly Prejudice HIP**

In considering whether the stay would be prejudicial to the patent owner or give accused infringers a clear tactical advantage, courts often consider four factors: (1) the timing of the request for review; (2) the timing of the request for stay; (3) the status of the review proceedings; and, (4) the relationship of the parties. *See, e.g. Contour IP Holdings, LLC v. Go Pro, Inc*., C.A. No. 15-1108-LPS-CJB, 2016 U.S. Dist. LEXIS 95627 at *11 (D. Del. July 14, 2016) (citations omitted).   HIP discusses those factors as a precursor to, and integrated with, its identification of the specific undue prejudice to HIP and the tactical advantage to Defendants.

1.      The Timing Factors and the Status of the Review proceeding

The chronology reveals Hormel's history of attempts to obtain a tactical advantage over HIP.  In 2014, Hormel counterclaimed for ownership of the '610 Patent in the Minnesota case, based, in part, on alleged prior invention by Hormel employees.[2]  Selinger Decl., Ex. 2 at 2-3. After the Minnesota district court granted summary judgment in favor of HIP on the ownership claim, *id*. at 9-10, Hormel changed its tactics to attacking the patentability of the HIP '610 Patent. In particular, Hormel wrote to HIP's prosecution counsel, conceding HIP had discussed another JBT patent ("Hwang '120") during prosecution but contending he should also disclose two additional JBT patents which Hormel asserted, in conclusory fashion, were material prior

---

[2] This change in position came six years after Hormel wrote to Ramesh Gunawardena, Manager of Technology and Process Development at JBT, accusing him of violating contractual confidentiality obligations, informing him of HIP's pending patent on the cooking process, and lauding the unique nature of even the partially-disclosed inventive process.  Selinger Decl., Exs. 4-5.

art.   Selinger Decl., Ex. 3.   However, while Defendants aggressively pursue ever-evolving accusations of inequitable conduct, (*see* D.I. 79, p. 4-8, and 11-17), HFC does not rely on either JBT patent as a primary reference in the IPR and uses only one (Jara '703) as even a secondary reference.   D.I. 89, Ex. A at 15.   Moreover, the 2016 letter failed to mention either primary reference on which HFC now relies in the IPR (Hwang '962 and McVeagh), although Defendants have been aware of McVeagh since at least as early as February 4, 2014,[3] and Hwang '962 since at least as early as July 13, 2016, when HIP's counsel discussed that patent in a declaration filed during prosecution of the '610 Patent.

Hormel, although admittedly monitoring the progress of HIP's patent application, did not use 35 U.S.C. § 122(e) ("[p]reissuance submissions by third parties") to communicate to the PTO its view of either the JBT prior art identified in its September 2, 2016 letter, or the prior art on which HFC now relies in its IPR petition.   The '610 Patent issued on December 6, 2016, and HFC could have filed its IPR petition in 2017, long prior to suit, or could have filed the IPR petition in April 2018, promptly after HIP filed suit.   Instead, it waited more than eight months after suit was filed, even though Defendants concededly had determined to file an IPR and a motion to stay early in the case.   D.I. 19, p. 9.   HFC postponed filing its IPR petition until it had used this litigation to obtain information in this case which it would not have been allowed to seek in the discovery-limited IPR process.   *See* 37 CFR § 42.51; Selinger Decl., Ex. 10.

## 2.    The Relationship Between the Parties

HIP and Defendants had a business relationship that went back many years.   HIP, formerly "Unitherm," had been a supplier of inventive processes and equipment to meat producers for many years, including to Hormel.   *See, e.g., Unitherm Food Systems, Inc. v. Swift-*

---

[3] Hormel included that reference in an Information Disclosure Statement during prosecution of an application that issued as U.S. Patent No. 9,775,369.   *See* D.I. 79, Ex. C.

*Eckrich, Inc.*, 546 U.S. 394, 397-98 (2006) (because Unitherm's Howard was the first inventor, the process Unitherm delivered to Hormel did not infringe any valid patent).

In 2007, Mr. Howard shared his inventive process for making better precooked sliced bacon with Hormel in confidence.  Hormel and HIP entered into a joint development agreement which Hormel terminated prematurely, ostensibly for lack of a commercially viable application. HIP provided Hormel with a copy of Mr. Howard's filed patent application almost immediately after its January 11, 2008 filing date.  Selinger Decl., Ex. 4.  In 2014, after Hormel introduced what became its very successful infringing product, Unitherm sued Hormel for breach of contract and theft of trade secrets in Minnesota federal court.  In granting summary judgment in favor of Unitherm and against Hormel on a counterclaim for ownership of the '610 Patent, the district court found that in 2012, Hormel disclosed to JBT (including Mr. Gunawardena) all of the unique process conditions required for Mr. Howard's invention and required JBT to inspect the Unitherm spiral oven in an effort to develop a process to achieve the same unexpected results, to fill a long-felt need.  *Id*., Ex. 2.  *See also id*, Exs. 6-8.  In 2013, after JBT made extensive revisions to its then-commercial spiral oven to create a custom oven, Hormel began buying JBT spiral ovens, ██████████████████████████████████████████████████████ *Id*., Ex. 9.

In 2010, after terminating the joint development agreement with HIP, Hormel mislead HIP into selling Hormel a then-leased Unitherm spiral oven by intimating Hormel had no further interest in pursuing precooked sliced bacon made in a spiral oven. In 2014, two senior Hormel executives, one being Hormel's then-president, misrepresented to Unitherm that Hormel had developed its Bacon 1 product using prior Hormel work, when it had actually relied on Unitherm's unique process.  Hormel publicly announced in 2014 that its Bacon 1 product was

being produced by an improved "hybrid process," but that is a contrived marketing story to avoid crediting Mr. Howard with his breakthrough inventive process.

As a result, this case is unlike those on which Defendants rely where the Plaintiff was a non-practicing entity that merely sought to monetize its patent.  HIP and its president, Mr. Howard, are seeking to vindicate their rights and enjoin Defendants' further unauthorized use of the patented invention.

### 3.   Undue Prejudice to HIP

Granting a stay would unduly prejudice HIP.  There is a very real possibility of necessary witnesses' memories fading or disappearing entirely. *See, e.g., Intellectual Ventures I LLC v. Toshiba Corp.*, Civ. No. 13-453-SLR/SRF, 2015 U.S. Dist. LEXIS 63859, at *7-8 (D. Del. May 15, 2015) (*citing Benefit Funding Sys. LLC v. Advance Am. Cash Advance Centers, Inc*., C.A. No. 12-801-LPS, 2013 WL 3296230 at *2 (D. Del. June 28, 2013) (fading memory as prejudice). Mr. Howard reduced his patented invention to practice in 2006 and performed demonstrations under a confidentiality agreement with Hormel in July 2007.  HIP employees assisted or were witnesses to his efforts, and Mr. Howard and other HIP employees worked cooperatively with Hormel employees during the remainder of 2007 and sought to be cooperative during 2008 and 2009.  Selinger Decl., Ex. 10, pp. 31-37.  Defendants' co-inventorship, invalidity and inequitable conduct defenses implicate those 2006-2009 activities. *Id*., Ex. 11, ¶¶ 37-75, Ex. 12; ¶¶ 37-75, D.I. 11; CC ¶¶ 22-39, 60, 208. Thus, a stay raises the very real possibility of prejudice resulting from necessary witnesses' memories fading, or disappearing entirely during the delay, which could add up to another year and a half to this already prolonged dispute.

HIP also will likely suffer prejudice from the loss of its chosen forum to decide all of Defendants' invalidity issues. *Intellectual Ventures I*, 2015 U.S. Dist. LEXIS 63859 at *7-8; *Benefit Funding*, 2013 WL 3296230, at *2-6. (prejudice due to loss of chosen forum.)  Under

current schedules, and as explained above, the jury will have issued its verdict a month or more before the PTAB issues its final decision on the IPR, even if instituted.  Moreover, unlike the PTAB, the jury will decide all of Hormel's invalidity defenses, not simply the subset of Defendants' invalidity defenses that HFC has raised and which can be resolved in an IPR proceeding. *See* 35 U.S.C. § 311(b) (limiting IPR proceedings to invalidity based on patents and printed publications).  And the jury will be instructed that HIP has the benefit of the presumption of validity, which Defendants can overcome only by clear and convincing evidence, 35 U.S.C. § 282, while HFC's burden in the IPR is preponderance of the evidence.  35 U.S.C. § 316(e).

HIP also will suffer prejudice from the loss of its chosen forum because, if the case proceeds piecemeal, Defendants would get two bites at the invalidity apple if HIP prevails at the PTAB because of their broad spectrum of invalidity defenses.  Conversely, the IPR would not resolve all issues in the litigation if the PTAB does not ultimately hold all three claims invalid, or even if, *arguendo,* HFC obtained a complete win at the PTAB, as Defendants have also asserted an inequitable conduct defense and counterclaim.  Consequently, HIP also would be prejudiced by the substantial incremental legal fees and costs it would incur if the case is stayed and then restarted under any scenario, and the Court's interest in efficiently managing its docket will be undermined by this type of "start and stop" process.  *Advanced Microscopy Inc.*, *v. Carl Zeiss Microscopy, LLC*, C.A. No. 15-516-LPS-CJB, 2016 U.S. Dist. LEXIS 17363, at *6-8 (D. Del. Feb. 11, 2016); *see also Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345, 348 (D. Del, 2016).

HIP also would suffer prejudice from the loss of its chosen forum because, unlike the record before the PTAB, the Court and jury will have the benefit of a treasure trove of documentary evidence produced by Defendants in this case confirming, among other things, non-

obviousness of the '610 Patent claims.  However, because of restrictions in the Protective Order, HIP cannot use those documents in the IPR without consent from Defendants.  HIP recently requested such consent from Defendants, but has not yet received a response.  Selinger Decl., Ex. 13.

HIP also would be prejudiced by its ability to seek injunctive relief while the case was stayed.  As noted above, HIP does not fit the mold of a typical non-practicing entity ("NPE") inasmuch as, for many years, it competed for Hormel business.  *Unitherm Food Systems,* 546 U.S. at 397-98.[4]  Unitherm (*i.e.*, HIP) disclosed its unique process for precooked sliced bacon to Hormel in 2007, entered into a joint development agreement with Hormel, and was repeatedly misled by Hormel between 2010-2014, when Unitherm instituted legal action.  Hormel then blacklisted Unitherm, leading to the sale of Unitherm's business assets.  Mr. Howard, the sole inventor of the HIP '610 Patent, has been and is HIP's president.  Under these circumstances, HIP should be able to obtain a permanent injunction against Defendants.  *See Software Research, Inc. v. Dynatrace LLC*, 316 F. Supp. 3d 1112, 1137-38 (N.D. Cal. July 3, 2018) (denying motion to strike plaintiff's prayer for injunctive relief based on plaintiff's status as an NPE).

Finally, the delay resulting from a stay will allow reputational injury caused by Defendants' baseless accusations of inequitable conduct against HIP's president and patent counsel to continue to fester.  HIP's president, David Howard, is recognized as an industry pioneer.  HIP's accused patent counsel will continue to practice patent law in their communities sullied by this cloud of unfounded accusations of inequitable conduct.  Defendants, having made

---

[4] HIP need not engage in direct competition with Defendants to obtain lost-profit damages or an injunction since it was offering for sale spiral ovens configured to perform the patented process when the '610 patent issued. *See, e.g.*, *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-46 (Fed. Cir. 1995) (allowing available damages for any injury resulting from the infringement that "was or should have been reasonably foreseeable" by the infringer, so long as the patentee was selling some item on which it lost profits due to the infringer's conduct.).

bogus allegations, should not be allowed to delay the ability of the accused individuals to clear their names.

Defendants' characterizations of HIP as a "non-practicing entity" and as not a direct competitor do not negate the real prejudice HIP would suffer. *See, e.g., Intellectual Ventures I* 2015 U.S. Dist. LEXIS 63859 (denying stay although IV was not a direct or indirect competitor); *Copy Prot. LLC,* C.A. No. 14-365-LPS, 2015 U.S. Dist. LEXIS 78270, at *2-3 (D. Del. June 17, 2015) (denying stay after finding the delay in petitioning for IPR could create some tactical advantage for plaintiff and a potential for prejudice, even though plaintiff was a non-practicing entity).

Defendants rely on four cases where the plaintiff was a non-practicing entity and the district court granted a motion to stay.  D.I. 88, at 12.  But none of those cases granted a stay merely because the plaintiff was an NPE and none had the specific showings of undue prejudice, *supra*, and tactical disadvantage, *infra*, HIP here makes.  Those cases have in common a lack of established undue prejudice (other than harm arising only from delay) or a dozen asserted patents with multiple claims.[5]

---

[5] *See Canatelo LLC v. Axis Commc'ns,* C.A. No 13-1227-GMS, 2014 U.S. Dist. LEXIS 161801 *3 n.4 (D. Del. May 14, 2014) (the court noted that "the parties have yet to conduct any discovery and no scheduling order has been entered[,]" which weighed in favor of a stay. (citations omitted)); *Miics & Partners Am. Inc. v. Toshiba Corp.,* C.A. No. 14-803-RGA, 2015 U.S. Dist. LEXIS 175193 at *4-5 (D. Del. Aug. 11, 2015) (Plaintiff asserted dozens of patents increasing the likelihood that the PTAB would grant some of the IPRs, that simplification was likely to occur, and there was no showing of undue prejudice to the patent owner.); *CallWave Commc'ns, LLC v. AT&T Mobility, LLC* C.A. No. 12-1701-RGA, 2015 U.S. Dist. LEXIS 33153, at *4-5 (D. Del. Mar. 18, 2015) (contrary to Defendants' argument, a first motion to stay was denied after institution of an IPR against a claim of one patent and granted only after institution of a second IPR.); *In re Bear Creek Techs.*, MDL No. 12-md-2344, 2013 U.S. Dist. LEXIS 103636, at *13-31 (D. Del. July 17, 2013) (court did not limit its analysis on whether granting the stay was unduly prejudicial to the plaintiff based on its status a non-practicing entity, and also found that granting the stay would likely result in the simplification of the case).

In view of the substantial, undue prejudice to HIP, and because Defendants failed to offer evidence of hardship or inequity, the Court should deny the motion to stay.   "'It is well settled that before a stay may be issued, the [movant] must demonstrate a clear case of hardship or inequity if there is even a fair possibility that the stay would work damage on another party."' *Intellectual Ventures I,* 2015 U.S. Dist. LEXIS 63859 at *8 (quoting *Gold*, 723 F.2d at 1075-76) (citations omitted)(internal quotations omitted); *ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, C.A. No. 12-054-GMS-MPT, 2013 U.S. Dist. LEXIS 25015, at *16-24 (D. Del. Feb. 25, 2013) (recommending denial of motion to stay where "defendant has not shown how denial of a stay would cause it substantial hardship or inequity").

4. Tactical Disadvantages for HIP

Defendants delayed filing their IPR petition until many months after suit was filed and several years after they became aware of the patents and patent publications on which HFC relies in the IPR.  HFC postponed the filing of its IPR until after Defendants obtained comprehensive, non-confidential discovery and disclosures from HIP on issues relevant in the IPR petition, *e.g.*, Mr. Howard's conception and reduction to practice and HIP's claim construction positions. Their delay was rooted in their desire to attain an unfair tactical advantage by capitalizing on the knowledge they obtained in the litigation to HIP's detriment. *See e.g., TruePosition, Inc. v. Polaris Wireless, Inc.*, C.A. No. 12-646-RGA/MPT, 2013 WL 5701529, *6 (D. Del. Oct. 21, 2013) ("[f]ilings for IPR made well after the initiation of litigation . . . may suggest an unfair tactical advantage or dilatory motive.") (citation omitted).

In addition, Defendants have indicated they intend to pursue their inequitable conduct counterclaim even were the PTAB to rule that all three claims are invalid.  D.I. 88 at 3 ("Should an IPR be instituted, as is statistically likely, a PTAB invalidity decision *will end HIP's*

16

*case*.") (emphasis added).[6]   Seeking seriatim resolution of limited issues before the PTAB and only later dealing with the remainder of this case provides Defendants an unfair tactical advantage.

As explained above, the IPR, followed by a motion to stay, is only the latest event in Defendants' record of seriatim arguments and theories to delay resolution of legally-flawed defenses.  Defendants may have a legal right to change their view of purportedly relevant prior art.  They have the right to change their positions from representing to JBT's Gunawardena in 2008 that HIP's now-patented invention was a novel and unique process, Selinger Dec., Ex. 5, to now asserting the '610 Patent is invalidated by a patent publication in which Mr. Gunawardena is one of five co-inventors, as Mr. Gunawardena and HFC now argue in the IPR petition.  However, Hormel's changing positions and use of delay for tactical advantage by obtaining information during discovery, reinforces the clear tactical disadvantage to HIP were Defendants allowed to reverse the current sequence of events from jury verdict first to trial only after a final decision from the PTAB on a subset of Defendants' invalidity claims.

### C.      A Stay Will Not Simplify the Issues in Question and Trial

The vast majority of motions to stay district court litigation pending resolution of an IPR proceeding are not granted, if ever, until an IPR proceeding has been instituted.   Under circumstances involving far less prejudice and tactical disadvantage than HIP shows above, courts have concluded: "[g]enerally, 'the "simplification" issue does not cut in favor of granting a stay prior to the time the PTAB decides whether to grant the petition for *inter partes* review." *Copy Prot. LLC*, 2015 U.S. Dist. LEXIS 78270, at *2-3 (quoting *Freeny v. Apple Inc.,* 2014 WL 3611948, at *9 (E.D. Tex. July 22, 2014)) (denying motion to stay based on IPR petition).  *See*

---

[6] HIP and HFC would have the right to appeal an adverse decision from the PTAB to the Federal Circuit.  HIP would anticipate taking an appeal from an adverse PTAB final decision.

*e.g.*, *Invensas Corp. v. Samsung Elecs. Co.,* C.A. No. 17-1363-MN-SRF, 2018 U.S. Dist. LEXIS 169999, at *5-9, 16 (D. Del. Oct. 2, 2018) (motion to stay denied); *Universal Secure Registry, LLC v. Apple Inc.,* C. A. No. 17-585-CFC-SRF,  2018 U.S. Dist. LEXIS 159539 at *6-9, *13 (D. Del. Sept. 19, 2018) (same: noting that "[u]nless and until the PTAB institutes IPR and CBM proceedings based on the petitions, any expected simplification rests on speculation that such institution will occur." (citations omitted)); *Pragmatus Mobile, LLC v. Amazon.com*, Inc., C.A. No. 14-436-LPS, 2015 U.S. Dist. LEXIS 82256, at *2-5 (D. Del. June 17, 2015) (motion to stay denied). *Accord Advanced Microscopy*,  2016 U.S. Dist. LEXIS 17363, at *2-9 (same); *Davol, Inc. v. Atrium Med. Corp*., C.A. No. 12-958-GMS,  2013 U.S. Dist. LEXIS 84533 at *4-7, *17-19 (D. Del. June 17, 2013).

Defendants rely heavily on *Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*, C.A.No. 13-335-LPS-CJB, 2014 U.S. Dist. LEXIS 61555 (D. Del. Jan. 15, 2014).  Judge Burke decided this case in January 2014, but since then he (and the other current judges in this district) have rejected the approach of staying cases pending an institution decision. In *Advanced Microscopy*, Judge Burke explained why: when he decided *Princeton Digital* in January 2014, "the PTAB was granting review as to 'nearly all' of the IPR petitions on which it had then issued decisions." *Advanced Microscopy*, 2016 U.S. Dist. LEXIS 17363 at *6.  But "as time has passed since the new IPR process was instituted," "more recent data suggests that review is being instituted in far fewer cases," and "the Court has become less and less sure about the merit of granting a stay in favor of an IPR proceeding, when the PTAB has not even weighed in on whether to institute review." *Id.* (denying motion to stay based on IPR petition).  As Judge Burke remarked, now that "the statistical likelihood of the PTAB instituting review on any petition seems less like 'near certainty' and more like 'fair probability,'" it has become "less reasonable

. . . to stop a district court proceeding after it has started. . . ." *Id*. at *7.  Indeed, none of the cases on which Defendants rely is dated after 2015.

Defendants rely heavily on statistics to overcome speculation, but do so in a misleading way.   Niederluecke Exhibit E, p. 6 (D.I. 89) shows a general decline in granted institution decisions between FY13 and FY18 from 87% to 60%.   Defendants, however, rely on a **cumulative** chart which shows that between September 16, 2012 and December 31, 2018, once an IPR petition has been instituted all claims have been held invalid in 64% of the cases.  *Id*. at 10.  However, as Judge Burke noted, both the percentage of IPR petitions actually instituted and the percentage of decisions invalidating all claims in instituted matters have declined since 2012.

In all events, as set forth in the Counterstatement of Facts, *supra*, statistics cannot mask the lack of merit to HFC's petition. The petition is defective as an initial matter because HFC fails to include JBT as a real-party-in-interest.  And as to substance, the PTAB is unlikely to institute HFC's petition because it relies on the same or substantially the same prior art as was before the Examiner.  *See* 35 U.S.C. § 325(d) (granting discretion to reject a petition relying on the same or substantially the same prior art).  As mentioned above, Hwang '962 does not add any structure to Hwang '120 (which the Examiner considered) that is in any way relevant to any of the claim limitations.  McVeagh is not prior art to Mr. Howard's claimed invention, D.I. 79 at 7, 15, and, as discussed above is at best cumulative to the prior art considered by the Examiner. The true nature of McVeagh is apparent not only from what is said in that patent publication, but also from Hormel's conduct in not identifying McVeagh in its September 2016 letter to HIP and not calling McVeagh to the Patent Office's attention during prosecution of Defendants' copy-cat

'498 patent.[7]   Finally, Mr. Gunawardena's conclusory declaration is unlikely to be accorded sufficient weight to gap-fill the critical technical flaws in HFC's IPR petition in view of JBT's need to copy Mr. Howard's process at a Hormel facility.

Finally, a stay will not simplify issues in this case.  HIP asserts willful infringement by Defendants.  They have responded with affirmative defenses and/or counterclaims for patent invalidity based on 35 U.S.C. § 112, and invalidity under 35 U.S.C. §§ 102, 103, including assertions of on-sale bar activities, and anticipation or obviousness based on patents and printed publications, including Hwang '962 and McVeagh.  They also assert inequitable conduct.  If HFC obtains anything less than a complete victory before the PTAB, an outcome which is much more likely than not, the case will continue to have issues of infringement, willfulness of the infringement and invalidity, and Defendants might even attempt to use the references on which HFC relied in the IPR in anticipation or obviousness combinations.  Such a result would not substantially simplify the case or reduce the number of depositions needed.  Defendants will still need an invalidity technical expert.  Nor, as explained above, is the IPR likely to offer guidance on claim construction since HFC seeks to avoid forcing the PTAB to rule on claim construction positions, and any construction would take place well after this Court already ruled.  *See, e.g.*, Niederluecke Decl., Ex. A, pp. 10-11 & 11 n.2; p. 19; pp. 47-48.

## VII.   CONCLUSION

In view of the foregoing, Defendants' Motion to Stay Pending *Inter Partes* Review should be denied.

_____

[7] HIP seeks correction of inventorship and assignment of that patent in C.A. No. 1:18-cv-00802-CFC.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for HIP, Inc.*

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX  75201
(214) 272-0958

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW P.L.L.C.
2700 North Hemlock Court, Suite 111 E
Broken Arrow, OK  74012
(918) 615-3357

February 1, 2019