IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HIP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-615 (CFC) |
| | ) | |
| HORMEL FOODS CORPORATION, | ) | |
| HORMEL FOODS CORPORATE SERVICES | ) | |
| LLC, OSCEOLA FOOD, LLC, | ) | |
| ROCHELLE FOODS, LLC, AND | ) | |
| DOLD FOODS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**HIP, INC.'S MOTION TO STRIKE DEFENDANTS'
REPLY IN SUPPORT OF THEIR MOTION
<u>FOR SUMMARY JUDGMENT ON INDEFINITENESS</u>**

Plaintiff HIP, Inc. respectfully requests that the Court strike the Reply Brief

(D.I. 121) and Gunawardena Declaration (D.I. 122) submitted by Defendants in

support of Defendants' motion for summary judgment of indefiniteness for

violating the Court Memorandum Order on briefing (D.I. 115).

Based on Hormel's agreement at the *Markman* hearing that it would stand

on its prior claim construction briefing on indefiniteness, subject only to

addressing any "new evidence" in Plaintiff's answering brief (4/9/19 Tr. at 74, 77)

("If they are going to bring in new evidence is what I mean, then we would want

the opportunity [to reply].")  The Court thus explicitly limited the scope of

Hormel's reply brief to only "issues raised in Plaintiff's answering brief that were

not raised in the *Markman* briefing." D.I. 115, ¶3.  The Court further stated that "[t]he reply brief and any attachments thereto will be struck if Defendants address in their reply brief arguments that have previously been made." *Id.* Despite this clear directive, Hormel's reply brief (D.I. 121) revisits previously made arguments. In addition, Hormel circumvents the Court's 2,500 word limit by merely incorporating, without discussing, a Declaration from Mr. Gunawardena (D.I. 122) that itself exceeds 2,500 words.

Arguably, the *only* issue HIP raised for the first time in its Answering Brief is HIP's response to Hormel's assertion that the Example is not covered by the claims (D.I. 118 at 9-13), an issue that Hormel first raised in its claim construction sur-reply brief.  However, Hormel addresses this new issue in its Reply Brief only in passing, incorporating eight pages of its expert's declaration (*see* D.I. 122 at 10), and instead re-hashes its own previous arguments and issues raised during the *Markman* briefing.

The table below sets out representative, non-exhaustive examples of Hormel exceeding the proper scope in its Reply Brief:[1]

---

[1] HIP does not specifically object to Section I of the Reply Brief or paragraphs 1-4 or 6-22 of the Gunawardena declaration.

| Hormel's Reply Brief Argument (D.I. 121) | Prior *Markman* Briefing (D.I. 102, 103) |
|---|---|
| **"II.A. HIP Cannot Identify the Alleged 'Plain and Ordinary Meaning' of 'Resembling a Pan-Fried Bacon Product.'"** (D.I. 121 at 3)<br><br>"with no objective boundaries provided in the intrinsic evidence, not even HIP can identify with reasonable certainty what does and does not resemble pan-fried bacon." (*Id.* at 4) | HIP asserted that the limitation has a plain and ordinary meaning during *Markman* briefing. (D.I. 102 at 2, 32).<br><br>HIP argued that the term has a well-known and understood meaning to people skill in the art (*id.* at 41-43).<br><br>HIP's expert, Mr. Corliss, opined that the term has a plain and ordinary meaning (D.I. 103, Ex. C-2, ¶10).<br><br>Hormel argued that "HIP does not offer the Court any guidance to construe the phrase 'resembling a pan-fried bacon product'" and argues the intrinsic evidence (D.I. 102 at 25).<br><br>Hormel's expert criticized Mr. Corliss for not "provid[ing] an opinion as to how he thinks a person of ordinary skill in the art would define the term 'resembling a pan-fried bacon product'" (D.I. 103, Ex. D-1, ¶ 29). |
| **"II.B. The Intrinsic Evidence Provides No Objective Boundaries for 'Resembling a Pan-Fried Bacon Product.'"** (D.I. 121 at 4)<br><br>"nothing in the intrinsic evidence defines the objective boundaries of what does and does not resemble pan-fried bacon" (*Id.* at 5) | Hormel argued "nothing in the patent or prosecution history provide any objective criteria to measure whether bacon made using the claimed process 'resembles' pan fried bacon" (D.I. 102 at 47). Hormel has asserted that "[w]ithout objective criteria, the 'resembling' inquiry is based entirely on subjective opinion" (*id.* at 48).<br><br>Additionally, whether or not a POSITA would understand the term with a reasonable certainty has been raised |

| | previously in the *Markman* briefing. *See* D.I. 102 at 21, 25-31, 39-43. |
|---|---|
| "For the first time, HIP concedes that the specification provides "a list of factors a POSITA would understand can be used to determine whether precooked sliced bacon 'resembles a pan-fried bacon product,' *i.e.*, 'texture, bite, mouth feel, color, and appearance. . . . Yet, HIP does not point to anything in the intrinsic evidence that identifies what those factors should be in order to resemble pan-fried bacon." (D.I. 121 at 4)<br><br>"The intrinsic evidence discusses certain attributes, i.e., texture, bite, mouth feel, color, and appearance, but fails to identify which of those attributes should be considered and what those attributes should be to meet the 'resembling a pan-fried bacon' limitation." (*Id.* at 7) | Hormel argued that "the specification fails to provide ***any*** guidance as to what constitutes the texture, bite, mouth feel, appearance, and color of a pan-fried product as opposed to a microwave product" (D.I. 102 at 27 (emphasis in original); *see also id.* at 47-48).<br><br>Mr. Gunawardena opined on this issue (D.I. 103, Ex. D-1, ¶¶ 22, 24, 26, 27; *id.* Ex. D-2, ¶ 11).<br><br>HIP discussed these characteristics as set forth in the Background section of the '610 patent (D.I. 102 at 35).<br><br>Mr. Corliss also discussed these characteristics in response to Mr. Gunawardena (D.I. 103, Ex. C-2, ¶ 9). |
| "With no support in the intrinsic record, HIP attempts to rely on Hormel's documents to argue that it was unnecessary for the specification to provide 'further explanation' of what resembles pan-fried bacon 'because the term had a plain and ordinary meaning' to a POSITA." (D.I. 121 at 5)<br><br>"In some documents, Hormel refers to 'appearance and flavor.' *See, e.g.*, D.I. 103, Ex. A, Ex. 19." (*Id.* at 5)<br><br>"In others, Hormel discusses 'texture, aroma and taste' or 'color and [] mouth feel.' *See, e.g.*, D.I. 119, Ex. B, Exs. 37, | Hormel commented on select Hormel documents introduced during *Markman* briefing (D.I. 102, 41-42; D.I. 103, Exhibit A, Ex. 19).<br><br>Mr. Gunawardena opined on these documents, including during the *Markman* briefing, concluding that "[n]one of them provide any objective criteria for measuring any of these characteristics" (D.I. 103, Ex. D-2, ¶ 13; *see also id.* ¶¶ 12, 14-17). |

| | |
|---|---|
| 40." (*Id.* at 5-6)<br><br>"The Hormel documents cite to different criteria and never provide a consistent standard employed by a POSITA to determine whether precooked bacon resembles pan-fried bacon." (*Id.* at 6) | |
| "Without any objective boundaries defining the bacon's attributes and how many attributes must be in common in order to resemble pan-fried bacon, the determination of what meets the claim limitation is left to 'the unpredictable vagaries of any one person's opinion' and is 'purely subjective.' *See Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1381 (Fed. Cir. 2018)." (D.I. 121 at 6) | Hormel argued that the term is '"purely subjective' and depends 'on the unpredictable vagaries of any one person's opinion'" (D.I. 102, at 21-22 (quoting *Intellectual Ventures I*)). |
| "The intrinsic evidence does not identify what the attributes, i.e., texture, bite, mouth feel, color, and appearance, are for microwaved bacon." (D.I. 121 at 7)<br><br>"Nor does the intrinsic evidence identify what any of the attributes should be in order for bacon made using the claimed process to be 'much closer' to pan-fried bacon than microwave bacon." (*Id.* at 7) | Hormel argued that "the specification fails to provide ***any*** guidance as to what constitutes the texture, bite, mouth feel, appearance, and color of a pan-fried product as opposed to a microwave product" (D.I. 102 at 27 (emphasis in original)).<br><br>Mr. Gunawardena opined that the specification fails explain how to determine if a microwave bacon product "resembles a pan-fried bacon product," (D.I. 103, Ex. D-1, ¶ 24), nor "provide[s] any guidance as to what constitutes desired colored and crispness of a pan-fried product as compared to a microwave product," (*id.* ¶ 25). |

| | |
|---|---|
| **"II.C. HIP reluctantly cites to the Example to try to provide certainty to 'resembling a pan-fried bacon product.'"** (D.I. 121 at 8)<br><br>"HIP argues for the first time that the Example provides certainty to the term 'resembling.'" (*Id.* at 8) | HIP discussed the Example previously, stating that it "concludes that the 'resulting cooked product has a crispness, appearance, and degree of golden brown color which are substantially the same as a bacon product which has been pan fried at 500°F for 5 minutes (i.e., 2.5 minutes per side)'" (D.I. 102 at 36, citing '610 patent 9:14-17).<br><br>HIP further argued that Example "provides objective indicia for determining whether a sliced bacon product made by practicing the patented invention under the specified conditions yields a cooked product with characteristics 'which are substantially the same as a bacon product which has been pan-fried' under specified conditions," (D.I. 102 at 40, citing '610 patent at 9:13-17).<br><br>Mr. Corliss addressed the Example, opining that it "provides an objective point of comparison between a pre-cooked bacon product made by the patented process and an actual pan-fried product" (D.I. 103, Ex. C-2, ¶ 7; *see also id.* ¶¶ 8, 11).<br><br>Hormel also addressed the Example (D.I. 102 at 47.  Hormel also acknowledged HIP's reliance "on the Example in the specification to try to save this phrase from an indefiniteness ruling" (*id.*).<br><br>Mr. Gunawardena has opined on the Example (D.I. 103, Ex. D-2, at ¶¶ 9-10). |

| | |
|---|---|
| "The specification repeatedly states that the inventive process can produce a precooked bacon product of 'generally **<u>any desired</u>** crispness and generally **<u>any desired</u>** color ranging from light gold to very dark golden brown.'" (D.I. 121 at 9) (emphasis in original)<br><br>"Thus, a POSITA would not understand 'resembling a pan-fried bacon' to be limited to a 'crispness, appearance, and degree of golden brown color' that is 'substantially the same as' the pan-fried bacon described in the Example." (*Id.* at 9) | Hormel previously argued the same point: "the specification explains that the 'spiral oven process and system can produce a precooked sliced bacon product of generally ***any desired*** crispness and generally ***any desired*** color ranging from light gold to very dark golden brown,' but fails to provide any guidance as to what constitutes 'any desired' color or crispness of a pan-fried bacon product" (D.I. 102 at 27-28).<br><br>Mr. Gunawardena opined on the same point, concluding that "[a] person of ordinary skill in the art would have understood that whether or not a pre-cooked bacon product resembles a pan-fried bacon product is subjective, because it depends on personal preference of consumers" (D.I. 103, Ex. D-1, ¶¶ 25-26).<br><br>HIP has also referenced that the Summary "discloses that the process can produce a precooked sliced bacon product of generally any desired crispness and generally any desired color range" (D.I. 102, at 35). |

Because Hormel violated the Court's Order on the scope of its Reply Brief by repeating arguments it previously made, HIP respectfully requests that Hormel's Reply Brief and the Gunawardena Declaration be stricken.  *See* D.I. 115 at ¶ 3.  The Gunawardena Declaration should further be stricken for evading the Court's imposed word count limits.  A proposed order is attached.

7

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/  Michael J. Flynn*

_____

Karen Jacobs (#2881)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@mnat.com
mflynn@mnat.com

*Attorneys for HIP, Inc.*

OF COUNSEL:

Jerry R. Selinger
Susan E. Powley
PATTERSON + SHERIDAN LLP
1700 Pacific Avenue, Suite 2650
Dallas, TX  75201
(214) 272-0958

B. Todd Patterson
PATTERSON + SHERIDAN LLP
24 Greenway Plaza, Suite 1600
Houston, TX  77046
(713) 623-4844

Dennis Brown
BROWN PATENT LAW P.L.L.C.
2700 North Hemlock Court,
Suite 111 E
Broken Arrow, OK  74012

May 16, 2019

## **D. Del. LR 7.1.1 Certification**

Counsel for HIP, Inc. certifies that the issues raised in this motion have been discussed with counsel for Defendants, including during a teleconference on May 16, 2019, but the parties were unable to reach agreement.

*/s/ Michael J. Flynn*

_____

Michael J. Flynn (#5333)