# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

HIP, INC., :
:
Plaintiff, :
:
v. : Civil Action No. 18-615-CFC
:
HORMEL FOODS :
CORPORATION, HORMEL :
FOODS CORPORATE :
SERVICES, LLC, OSCEOLA :
FOOD, LLC, ROCHELLE :
FOODS, LLC, and DOLD :
FOODS, LLC, :
:
Defendants.:

---

Karen Jacobs, Michael J. Flynn, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware; Jerry R. Selinger, Susan E. Powley, Patterson + Sheridan LLP, Dallas, Texas; B. Todd Patterson, Patterson + Sheridan LLP, Houston, Texas; Dennis Brown, Brown Patent Law, P.L.L.C., Broken Arrow, Oklahoma

*Counsel for Plaintiff*

David E. Moore, Bindu A. Palapura, Stephanie E. O'Byrne, Potter Anderson & Corroon LLP, Wilmington, Delaware; Kurt J. Niederluecke, Timothy M. O'Shea, Laura L. Myers, Barbara Marchevsky, Fredrikson & Byron P.A., Minneapolis, Minnesota

*Counsel for Defendants*

**MEMORANDUM OPINION**

June 24, 2019
Wilmington, Delaware

COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

## I.    INTRODUCTION

Plaintiff HIP, Inc. sued Defendants for infringing U.S. Patent Number 9,510,610 (the "#610 patent"). Defendants alleged as counterclaims that the #610 patent is invalid due to indefiniteness and unenforceable due to inequitable conduct and incorrect inventorship. I permitted Defendants to move on an expedited basis for summary judgment on its counterclaim that the #610 patent is indefinite and consequently invalid under 35 U.S.C. § 112.[1] *See* D.I. 115.

Defendants thereafter filed a motion for summary judgment on indefiniteness. D.I. 116. The motion has been fully briefed.[2] Both sides see fit to treat it as a motion for summary judgment even though they dispute certain facts, agree that it is within my discretion to make any subsidiary factual findings

---

[1] Defendants agreed that if the Court expedited consideration of the indefiniteness issue and granted judgment in Defendants' favor on their invalidity counterclaim, Defendants would dismiss their remaining counterclaims without prejudice and forego any motion for an exceptional case finding and for the recovery of attorney fees under 35 U.S.C. § 285. *See* D.I. 111 at 1.

[2] Defendants agreed that their claim construction briefing (D.I. 102 at 25–31, 46–48) would constitute their opening brief if I permitted the filing of an early motion for summary judgment of indefiniteness. *See* Tr. of Apr. 9, 2019 Hr'g at 76:23–25. HIP filed an answering brief (D.I. 118). I struck Defendants' reply brief (D.I. 121) and accompanying expert declaration (D.I. 122) because of Defendants' failure to comply with the Court's Memorandum Order on such briefing (D.I. 115). *See* D.I. 126.

necessary to resolve the issue of indefiniteness, and rely on competing expert testimony adduced at a hearing on Defendants' motion. *See* Tr. of May 22, 2019 Hr'g at 6:10–13; 11:9–11; *see also* Tr. of Apr. 9, 2019 Hr'g at 80:16–17, 81:6–8. Federal Circuit decisions appear to confirm that I may grant summary judgment based on indefiniteness even when the parties present conflicting expert testimony about whether a person of ordinary skill in the art (POSITA) would be able to understand disputed claim terms. *See, e.g., Capital Sec. Sys., Inc. v. NCR Corp.*, 725 F. App'x 952, 958–59 (Fed. Cir. 2018) (affirming district court's decision granting summary judgment of indefiniteness despite expert testimony that a POSITA would understand the disputed claim term with reasonable certainty); *cf. Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1249–50 (Fed. Cir. 2008) (affirming grant of summary judgment of indefiniteness based on intrinsic evidence and noting in dictum that conflicting expert testimony does not preclude a finding of indefiniteness). Accordingly, I will treat Defendants' motion as a summary judgment motion.

I have studied the parties' briefing and weighed the testimony of the parties' experts. For the reasons discussed below, I will grant Defendants' motion and declare the #610 patent to be invalid under § 112.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In normal circumstances, on summary judgment, "the facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true," *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996), and "the Court is not permitted to weigh the testimony of the competing experts and draw its own conclusion[,]" *HSM Portfolio LLC v. Elpida Memory Inc.*, 160 F. Supp. 3d 708, 727 (D. Del. 2016).  In this case, however, the parties have stipulated that I can make subsidiary factual findings and weigh the testimony of their respective experts in deciding whether, as a matter of law, the #610 patent is indefinite.

### B.  Indefiniteness

"[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  "While a claim term employing a term of degree may be definite where it provides enough

certainty to one of skill in the art when read in the context of the invention, a term of degree that is purely subjective and depends on the unpredictable vagaries of any one person's opinion is indefinite." *Intellectual Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1381 (Fed. Cir. 2018) (internal quotation marks, alterations, and citations omitted).

"Indefiniteness is a matter of claim construction, and the same principles that generally govern claim construction are applicable to determining whether allegedly indefinite claim language is subject to construction." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed. Cir. 2008), *abrogated on other grounds by Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014) (rejecting Federal Circuit's "insolubly ambiguous" standard for indefiniteness). As in claim construction, in making an indefiniteness determination, the district court may make "any factual findings about extrinsic evidence relevant to the question, such as evidence about knowledge of those skilled in the art, [which] are reviewed for clear error." *See BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017). "Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *Cox Commc'ns, Inc. v. Sprint Commc'n Co. LP*, 838 F.3d 1224, 1228 (Fed. Cir. 2016) (alteration in original) (quoting *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003)).

## III. DISCUSSION

The #610 patent is directed to a method of producing a pre-cooked sliced bacon product on an industrial scale. A preamble to claims 1 and 3 recites "[a] process . . . to produce a pre-cooked sliced bacon product resembling a pan-fried bacon product." The preamble applies to each of the patent's three claims, as claim 2 depends from claim 1. During claim construction, the parties disputed whether the preamble limits the scope of the claims. I adopted HIP's position that the preamble is limiting. *See* Tr. of Apr. 9, 2019 Hr'g at 62:11–63:24.

Defendants argue that the "resembling a pan-fried bacon product" language renders the #610 patent indefinite.

The claims do not define or otherwise clarify the scope of the disputed term. The patent's written description[3] provides two potential bases for determining whether precooked bacon "resembl[es] . . . pan-fried bacon." First, the written

---

[3] Section 112(b) of Title 35 provides that "[t]he specification shall conclude with one or more claims." This language makes clear that the specification includes the claims asserted in the patent, and the Federal Circuit has so held. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc) ("Claims must be read in view of the specification, of which they are a part."), *aff'd*, 517 U.S. 370 (1996). The Federal Circuit and other courts, however, have also used "specification" on occasion to refer to the written description of the patent as distinct from the claims. *See, e.g., id.* ("To ascertain the meaning of claims, we consider three sources: The claims, the specification, and the prosecution history."). To avoid confusion, I will refer to the portions of the specification that are not claims as "the written description."

description teaches that there are five "significant organaleptic[4] [sic] differences between the product produced by a continuous microwave process versus a traditional home-fried product . . . [and t]hus, [that] the microwave product has a significantly different texture, mouth feel, bite, appearance, and color [from a 'home-fried' or 'pan-fried' product]." #610 patent at 1:49–56; *see also id.* at 1:22–26 ("The continuous bacon cooking processes heretofore used in the industry have not been able to provide precooked sliced bacon products having the same texture, bite, mouth feel, color, and appearance as pan-fried products cooked in the home."); *id.* at 2:29–33 ("Moreover, the inventive bacon cooking process will produce a consistent product which does not have burned or blackened outer edges and is much closer than a microwaved product to home-fried bacon.").

The patent's specification, however, does not define or identify specific criteria for measuring or determining the texture, mouth feel, bite, appearance, or color of pan-fried bacon. Nor does the specification identify objective criteria to distinguish pan-fried bacon from microwaved bacon.

---

[4] The word "organoleptic" means "being, affecting, or relating to qualities (such as taste, color, odor, and feel) of a substance (such as a food or drug) that stimulate the sense organs" or "involving use of the sense organs." *Organoleptic*, MERRIAM-WEBSTER DICTIONARY (online ed. 2019). HIP's expert, Mr. Corliss, testified that "organoleptic" has no specialized meaning to a POSITA. *See* Tr. of May 22, 2019 Hr'g at 151:6–9, 156:15–24.

When asked if the patent's written description taught "how to evaluate the[]

five [organoleptic] characteristics to determine if a bacon product resembles a pan-

fried bacon product," HIP's expert, Mr. Corliss, testified that "[t]here is no specific

instruction because [the patent] relies on the person of ordinary skill to do that."

Tr. of May 22, 2019 Hr'g at 177:6–11. Mr. Corliss, however, could point to no

standards within (or even outside) the art of food processing systems and

processes[5] that shed light on, let alone define or describe, the texture, mouth feel,

bite, appearance, or color of pan-fried bacon.[6] Nor was he able to articulate in a

meaningful or helpful way what the texture, mouth feel, bite, appearance and color

of pan-fried bacon are:

> Q. . . . So there are five attributes that the patent
> discusses, texture, bite, mouth feel, appearance and color;
> is that correct?
> A. Who discusses that?
> Q. In the patent?
> A. Oh, okay. Yes.
> Q. *What does bite mean?*
> A. *Some people refer to that's a chewiness.*

---

[5] The parties agreed to adopt HIP's definition of the relevant POSITA for purposes
of Defendants' motion. *See* Tr. of May 22, 2019 Hr'g at 7:12–16. Under that
definition, "a POSITA would have (1) at least a Bachelor's Degree in Engineering
or Food Science and at least one year of experience working with food processing
systems or processes, *or* (2) at least five years of responsible technical experience
working with food processing systems or processes." D.I. 118 at 5–6 (emphasis in
original).

[6] The only standard relating to bacon that Mr. Corliss could identify was a United
States Department of Agriculture requirement that the weight of "fully cooked"
bacon be at most 40% of the bacon's raw weight. *See* Tr. of May 22, 2019 Hr'g at
159:5–20; 173:16–21.

Q. *And what does texture mean?*

A. *Just the surface texture of the bacon. Flimsy.*

Q. *Crunchy?*

A. *Yes.*

Q. *What does mouth feel mean?*

A. In the food industry, a lot of time the mouth feel relates to the – *it's the way something feels in your mouth. Ice cream, for example, has a good mouth feel* because it kind[] of slides around in your mouth. That's what it's talking about. It's not dry. *Just an acceptable -- pleasing.*

* * * *

THE COURT: So let's talk about the five organoleptic characteristics.

Could you describe for me how to compare the texture of microwaved bacon versus pan-fried bacon?

THE WITNESS: How I would compare it?

THE COURT: Yes.

THE WITNESS: Again, with multiple samples. *To me*, texture, it's tactile.

THE COURT: Right. Just in words. . . . If you can just articulate for me what the difference in texture is between a microwaved bacon product and a pan-fried bacon product.

THE WITNESS: *Typically*, microwaved bacon is a little chewier, a little more rubbery, a little more like rubber than pan-fried bacon.

THE COURT: I'm focusing on texture, not mouth feel. *I want to focus on texture for a second.*

THE WITNESS: Yes.

THE COURT: *How do you distinguish microwaved bacon from a pan-fried bacon product?*

THE WITNESS: It's *typically* a little softer, a little more flaccid, whereas *the pan-fried bacon can be a little crispier, a little more rigid. Not always, but typically.*

THE COURT: *Can you microwave bacon products and have a crispy product?*

THE WITNESS: *You can burn it to a crisp. Absolutely, yes.*

THE COURT: And then . . . if I just handed you two pieces of bacon and I said tell me which one is microwaved versus which one is pan-fried, you wouldn't be able to do that. You would first want to know which process each was made by. Right?

THE WITNESS: It would be difficult from two single pieces of bacon to say this is like pan-fried and this is not like pan-fried. . . .

THE COURT: And you couldn't do it without first knowing the process?

THE WITNESS: It would be very helpful to know the process.

THE COURT: . . . *[H]ow does microwave produced bacon compare with pan-fried produced bacon in mouth feel?*

THE WITNESS: *I'm not sure I could answer.*

THE COURT: How about, how does microwaved bacon compare to pan-fried bacon in terms of bite?

THE WITNESS: *To me,* it's usually a little more -- a little more rubbery.

THE COURT: Which one is?

THE WITNESS: The microwaved. It doesn't always have to be, depending on how long it has been cooked.

THE COURT: How do they compare in appearance?

THE WITNESS: *To me,* the microwaved bacon is a little more bland in terms of contrast between the fat and protein.

THE COURT: And how do they compare in terms of color?

THE WITNESS: The blandness of the microwaved bacon, my memory is usually a little lighter in color. Not always, but generally.

Tr. of May 22, 2019 Hr'g at 176:12–177:5, 190:14–193:7 (emphasis and underscoring added).

9

Perhaps most telling from the above-quoted testimony is Mr. Corliss's use of the words "to me" to preface his three responses when I asked him to compare the texture, bite, and appearance of microwaved bacon as compared to pan-fried bacon. Whether a Freudian slip or intentional, Mr. Corliss's use of "to me" shows what is evident from the totality of his testimony, namely that his assessment of what resembles pan-fried bacon is precisely *his* assessment—a purely personal, subjective evaluation. That conclusion is consistent with the opinion of Defendants' expert, Mr. Gunawardena, whom I found to be clearly and convincingly credible based on his mannerisms on the stand and his direct, unhesitating, and cogent responses to the questions posed to him. As Mr. Gunawardena testified, there are no objective standards in the patent or in the relevant art to determine if a bacon product resembles pan-fried bacon, and therefore "[t]o a person of ordinary skill in the art, it's very subjective." Tr. of May 22, 2019 Hr'g at 38:5–6; *see also id.* at 61:2–8.[7]

The second potential basis offered by the written description for determining whether precooked bacon "resembl[es] . . . pan-fried bacon" is Example 10, in

---

[7] To be clear, I also found Mr. Corliss to be credible when I questioned him. I did not question him, however, about his ultimate opinions; and I did not find his testimony concerning his ultimate opinions (i.e., whether the #610 patent is indefinite, the meaning of "resembling pan-fried bacon," and whether a POSITA would know what "resembling pan-fried bacon" means) to be credible.

which "[t]he resulting cooked product has a crispness, appearance, and degree of golden brown color which are substantially the same as a bacon product which has been pan fried at 500° F. for 5 minutes (i.e., 2.5 minutes per side)." *See* #610 patent at 8:55–9:17. The specification, however, does not define—or explain in any way how to measure or assess—the bacon's crispness, appearance, or degree of golden brown color referenced in Example 10. Nor does it identify the characteristics of the pan or bacon used in Example 10, even though, as Mr. Gunawardena credibly testified, those characteristics vary widely and affect substantially the crispness, appearance, and color of bacon fried in a pan. As Mr. Gunawardena explained, for example, aluminum and iron conduct heat differently, and thus frying bacon in an iron skillet will yield different results than frying the same bacon at the same temperature in an aluminum pan. *See* Tr. of May 22, 2019 Hr'g at 54:14–24. Water and fat content and thickness also affect how bacon looks and tastes when it is cooked, as does the part of the pig from which slices of bacon are cut. *See id.* at 53:17–54:14. Accordingly, as Mr. Gunawardena testified, Example 10 does not inform a POSITA how to determine whether bacon cooked by the claimed invention resembles pan-fried bacon. *See id.* at 53:8–15.

Mr. Corliss's testimony about Example 10 is consistent with Mr. Gunawardena's conclusions, and demonstrates that determining whether a bacon

product resembles pan-fried bacon would be a purely subjective exercise for a

POSITA:

> Q. Mr. Corliss, let's move onto the second part of the example, and it talks about the bacon product which has been pan-fried at 500 degrees for five minutes. Okay?
>
> A. All right.
>
> Q. What are the characteristics of a bacon product that has been pan-fried at 500 degrees for five minutes?
>
> A. It depends on what you said. There's a range of values that can be obtained by cooking bacon in a pan. . . . The example gives us a way to benchmark what to expect when looking at bacon that has been cooked in a pan.
>
> Q. We agree that this is a data point. One data point; right?
>
> A. One data point on a continuum.
>
> Q. Right. Okay. But I just want to know for this data point, because now we don't have to talk about the continuum. For this data point, describe for me *what are the organoleptic or* the five, the five attributes we've been looking at, tell me what each of *those five attributes are for this bacon that is in the example,* please.
>
> A. Well, it would have *a certain taste, a certain color, a certain crispness,* it would have *a certain aroma.*
>
> \* \* \* \*
>
> Q. . . . Is it correct that *you can't identify the specific attributes of a pan-fried bacon, a bacon that has been pan-fried at 500 degrees for five minutes; is that correct?*
>
> A. *These are sensory parameters. They're not -- there is no crispometer that you squeeze the bacon with. These are sensory perceptions.*

Tr. of May 22, 2019 Hr'g at 170:18–171:19, 172:15–21. Although Mr. Corliss insisted that pan-fried bacon has a "certain" taste, color, crispness, and aroma; he was never able to define or explain cogently the "certain" taste, color, crispness, and aroma. His inability to do so makes sense, because, as he admitted, there are no "crispometers" or other objective tools or criteria to measure or identify the "sensory parameters" of pan-fried bacon. The absence of such tools and criteria makes "resembling . . . pan-fried bacon" a term "that is purely subjective and depends on the unpredictable vagaries of any one person's opinion." *Intellectual Ventures*, 902 F.3d at 1381 (internal quotation marks and citation omitted).

## IV.  CONCLUSION

The #610 patent does not define the term "resembling a pan-fried bacon product." Neither the claims nor the written description of the patent clarify the scope of the term or provide any objective criteria to identify or measure the distinguishing features of pan-fried bacon. As a result, the term is purely subjective and the patent fails to meet the definiteness requirement of § 112. Accordingly, the #610 patent is invalid.

The Court will issue an Order consistent with this Memorandum Opinion.